HART *v.* REID.

1. MECHANICS' LIENS — MATERIALMAN FURNISHING TO ANOTHER MATERIALMAN NOT PROTECTED UNDER ACT.

   Under the mechanic's lien law (Act No. 140, Pub. Acts 1919, § 1), a materialman who furnishes materials in pursuance of a contract with another materialman who furnishes materials in pursuance of a contract with a subcontractor under the original contractor is not entitled to a mechanic's lien.

2. SAME—FAILURE TO FILE LIS PENDENS NOT FATAL.

   Under 3 Comp. Laws 1915, § 14805, failure of lien claimants to file notice of *lis pendens* did not affect their right to a lien.

3. CONTRACTS—BREACH BY OWNER JUSTIFIED CONTRACTOR IN NOT COMPLETING CONTRACT—WITHHOLDING ARCHITECTS' CERTIFICATES.

   Where the assignee of a lease contracted to erect a building upon the leased land, but, becoming insolvent, was unable to pay in accordance therewith, the contractors were under no obligation to complete the contract after it had been thus breached, and the engineers and architects could not legally withhold certificates of work done merely because of the assignee's inability to pay.

4. MECHANICS' LIENS—SUFFICIENCY OF FORM OF STATEMENT NOT RAISED IN COURT BELOW NOT CONSIDERED ON APPEAL.

   Where the question of the sufficiency of the form and substance of sworn statement of lien was not raised in the trial court, it will not be considered by the Supreme Court.

5. SAME—CLAIM FOR GREATER AMOUNT THAN ALLOWED NOT FATAL WHERE MADE IN GOOD FAITH.

   That contractors in their claimed lien filed for a larger

As to right of materialmen to mechanic's lien under statute, see 18 R. C. L. 911; 3 R. C. L. Supp. 875; 6 R. C. L. Supp. 1093; 7 R. C. L. Supp. 613.

As to effect of filing excessive mechanic's lien, see annotation in 29 L. R. A. (N. S.) 305; 18 R. C. L. 941.

amount than was allowed by the court would not invalidate their lien, where the claim was made in good faith.

6. SAME—REAL ESTATE SUBJECT TO LIEN WHERE OWNER CON-
TRACTED WITH LESSEE TO ERECT BUILDING.
Where a contract between the owners of land and the lessee provided not only for the lease of the land but that the lessee should erect a building thereon, under Act No. 140, Pub. Acts 1919, both the building and the real estate are subject to liens for unpaid claims for labor and material furnished in constructing the building.

ADDITIONAL OPINION.

7. MECHANICS' LIENS—EFFECT OF GIVING BOND TO RELEASE LIEN—
LIEN CLAIMANT NOT ENTITLED TO LIEN COULD NOT RECOVER ON BOND.
The giving of a bond under 3 Comp. Laws 1915, § 14800, to release and discharge a mechanic's lien in no way changed the rights of the lien claimant, and where he was not entitled to a lien, there was no liability on the bond.

Appeal from Wayne; Mandell (Henry A.), J. Submitted January 26, 1927. (Docket No. 69, Calendar No. 32,665.) Resubmitted May 4, 1928. Decided June 5, 1928. Additional opinion filed July 24, 1928. Rehearing denied October 1, 1928.

Bill by J. L. Hart, doing business as J. L. Hart Lumber Company, against Clarence A. Reid, trustee of the estate of Francis G. Brown, bankrupt, Robert McB. Grindley, John Finn & Son, the General Casualty & Surety Company, and others to foreclose a mechanic's lien. From the decree rendered, plaintiff and defendants Grindley and John Finn & Son appeal. Modified and affirmed.

*E. R. Milburn* (*John G. Libbers,* of counsel), for plaintiff.

*Frank C. Cook* and *John P. O'Hara,* for defendant John Finn & Son.

*Monaghan, Crowley, Reilley & Kellogg* (*O. Regis McGuirk,* of counsel), for defendants Interstate Plastering Company and Glanz & Killian Company.

*Lightner, Oxtoby, Hanley & Crawford* (*Ralph A. Mayer,* of counsel), for defendant John H. Busby, Inc.

*Max Kahn* (*Leopold D. Mayer,* of counsel), for defendant Reid.

*Henry B. Graves* and *Charles H. Hatch,* for defendants Grindley.

*Wilkinson, Lowther, Wilkinson & O'Connell,* for defendant General Casualty & Surety Company.

POTTER, J. This case involves an appeal by J. L. Hart, doing business as J. L. Hart Lumber Company, from a decree dismissing his bill to enforce a mechanic's lien; appeal of Robert McB. Grindley, Matilda V. Grindley, his wife, and Security Trust Company, from the same decree allowing liens in favor of John Finn & Son, Interstate Plastering Company, John H. Busby Company, Inc., and Edward Glanz and Maurice A. Killian, copartners doing business as Glanz & Killian Company; and the appeal of John Finn & Son from the decree allowing them a less amount than claimed.

The defendants Robert McB. Grindley and Matilda V. Grindley, his wife, were and are now the owners of the property in the city of Detroit upon which liens are claimed. The real estate was mortgaged by them to the Security Trust Company for $250,000. They leased the real estate to John H. Thompson. The lessee, Thompson, agreed to pay rent therefor as follows: From April 1, 1920, to March 31, 1925, $125,000 a year; from April 1, 1925, to March 31, 1930, $150,000 a year; from April 1, 1930, to March 31, 1935, $175,000 a year; from April 1, 1935, to March 31, 1945, $200,000 a year; and from April 1, 1945, to March 31, 1970, $250,000 a year; to pay all taxes, charges for

revenue, water taxes, and assessments, except Federal income taxes of the lessors; to bear the cost and expense of a subway on Woodward or Cass avenues, in event of its construction; and within one year from April 1, 1920, lessee was to begin to erect, on the leased premises, and fully complete within two years, a building covering the entire premises, so far as legally allowable, to cost not less than $500,000.

The buildings on the property at the time of lease were reserved by lessors to be removed and wrecked by them. The lessee covenanted that previous to removal of the buildings by lessors and beginning the new building he would deposit $200,000 in cash or approved securities with the Security Trust Company, to insure lessors against loss by reason of the wrecking and removal of the buildings already on the premises;—the $200,000 to be used as first payments by lessee in connection with the erection of the new building. The lessee was to hold lessors harmless from damages for personal injuries arising out of the construction of the new building. Contracts for the construction of the new building were not to be let unless and until the plans and specifications for the building were submitted to and approved by lessors or an architect selected by them. Lessee agreed to keep the buildings to be erected, or in course of erection, insured for 80 per cent. of their actual value, the insurance policies to be issued in the name of the lessors, loss if any payable first to lessors and then to lessee as their interest might appear.

Casualty insurance was to be taken out by the lessee in the joint names of lessors and lessee, and the policies deposited with lessors. In case the building to be erected was destroyed, the lessee was to rebuild and restore it. Upon the expiration of the term of the lease, or upon its termination by forfeiture, all buildings and improvements on the premises, except trade

fixtures, were to revert and belong to lessors without limitation or restriction.

Before any contracts for the erection of the building on the leased premises, or any part of it, were made John H. Thompson assigned this lease to the John H. Thompson Realty Company, a corporation.

The owners, Robert McB. Grindley and wife, mortgaged the real estate, and buildings erected and to be erected on the premises, to the Security Trust Company, as trustee, to secure the payment, both principal and interest, of $700,000 in par amount, of their 7 per cent. mortgage gold bonds.   The proceeds arising from the sale of these bonds were to be used to pay and discharge the $250,000 mortgage on the premises, and the balance belonged to the mortgagors.   This mortgage bore date May 18, 1922.   By its terms the mortgagors agreed they would not create, suffer to be created, accrue or exist any lien or charge having preference or priority over or equal with the mortgage lien.

On the same day, May 18, 1922, a contract was made between the John H. Thompson Realty Company, Robert McB. Grindley and wife, John H. Thompson, and the Security Trust Company, whereby the Grindleys paid $400,000 to the John H. Thompson Realty Company for an assignment by it to them of its leasehold interest in the lands owned by them and the building to be erected thereon, upon the condition that the John H. Thompson Realty Company pay to them its 22 simultaneously executed promissory notes aggregating $400,000, the payment of which was guaranteed personally by John H. Thompson.   In case of nonpayment of $400,000 or any portion thereof, or of any interest thereon, the Grindleys might take possession of the land and buildings then thereon; collect the rents, issues and profits, and apply the same to the indebtedness; sell and convey the leasehold in-

terest and buildings then thereon and apply the proceeds of sale less expenses upon the indebtedness.

The John H. Thompson Realty Company agreed to complete the building described in the lease on or before December 1, 1922, discharge or cause to be discharged all liens of contractors, laborers or materialmen upon the building, give a bond in the sum of $200,000 to erect and complete the building, free from liens, in accordance with the plans and specifications prepared by Esselstyn and Murphy, dated January 19, 1922, and to keep the buildings erected and to be erected insured.

The money, evidenced by the $400,000 in par amount of notes, was to be deposited with the Security Trust Company to the credit of the John H. Thompson Realty Company, subject to such agreements as might be made in reference to this credit between the realty company and the trust company, provided withdrawals therefrom, except pay for the trust company's services, should be made only upon architects' estimates in writing of work and material entering into the construction of the building.

Contracts for the erection and construction of the building were made by the John H. Thompson Realty Company with John Finn & Son, John H. Busby, Inc., and Glanz & Killian Company. The Interstate Plastering Company was a subcontractor under John Finn & Son.

The contest is narrowed to the claims of plaintiff and John Finn & Son. Defendants and appellants having waived on the argument any objection to the amount of the liens of the other parties, on conditions there stated, subsequently confirmed by stipulation reducing the amount decreed to be due John H. Busby, Inc., $89.68 below the amount fixed by the decree below.

Defendants and appellants claim plaintiff is not entitled to a lien; that the decree below as to him should

be affirmed; that the court erred in making the liens allowed a charge against the land. The right of John Finn & Son to any lien is contested. It is claimed the amount allowed is in any event excessive.

Plaintiff appeals from the disallowance of his claim of lien and John Finn & Son appeal from the reduction of the amount of their claim.

1. Plaintiff, J. L. Hart, doing business as J. L. Hart Lumber Company, sold five car loads of lumber to John M. Diver Lumber Company of Detroit, Michigan, to apply on a contract between S. E. Benjamin & Company, a subcontractor under John Finn & Son, and the John M. Diver Lumber Company, by which the John M. Diver Lumber Company was to furnish a quantity of lumber and materials for the building here involved. A portion of the lumber was consigned by J. L. Hart Lumber Company to the John M. Diver Lumber Company, and a portion to S. E. Benjamin & Company. The material furnished was used on the Thompson job. Notice of the furnishing of this material was given the John H. Thompson Realty Company. August 16, 1922, plaintiff filed his claim of lien against the land and building. Copies of the claim of lien were served on Robert McB. Grindley on August 18, 1922, and Matilda V. Grindley, John H. Thompson, and John H. Thompson Realty Company on August 22, 1922. September 8, 1922, proof of service was filed in the office of the register of deeds. February 14, 1923, plaintiff filed a bill to foreclose his lien, and February 16, 1923, filed a *lis pendens* in the office of the register of deeds. The defendants and appellants claim plaintiff was a materialman under Francis G. Brown, doing business as the John M. Diver Lumber Company, who was a materialman under Saul E. Benjamin, doing business as S. E. Benjamin & Company, a subcontractor under John Finn & Son, contractor. Defendants claim the notice of furnishing the materials by plaintiff given to the John H.

Thompson Realty Company was not given until all the materials had been furnished and gave no information as to the contractor or subcontractor receiving and using the materials on the job. Before the arrangement was made between plaintiff and the John M. Diver Lumber Company, the Diver Lumber Company agreed to protect plaintiff by filing a lien; and did so by Clarence A. Reid, trustee in bankruptcy, September 16, 1922. This lien of Reid, trustee in bankruptcy for Brown doing business as the Diver Lumber Company, was released and discharged under the provisions of section 14800, 3 Comp. Laws 1915, by a bond dated October 5, 1922, with Saul E. Benjamin & Company, and the General Casualty & Surety Company as surety in the sum of $20,708. Defendants further claim the trial court was right in dismissing plaintiff's bill, because plaintiff was a materialman furnishing material to another materialman, who furnished the material to the subcontractor; that only those materialmen who furnished material either to the owner, contractor, or a subcontractor are entitled to a lien; that the statute expressly excludes materialmen who furnish material to other materialmen; the reason for this being that the work which a subcontractor performs is visible and therefore ascertainable by the owner or principal contractor; but the principal contractor, Finn & Son, had no knowledge of plaintiff's claim to be a materialman; plaintiff was not known either to the lessee or the principal contractor or even to S. E. Benjamin & Company, the subcontractor; and there was no provision in the contract between Benjamin & Company, the subcontractor, and Brown, doing business as the Diver Lumber Company, that the latter should purchase the lumber or any portion of it from plaintiff; the Diver Lumber Company was to protect plaintiff by filing a lien, and plaintiff should have filed a bill or cross-bill to take advantage of the bond given to release the lien filed

by Reid, trustee of Brown doing business as the John M. Diver Lumber Company, to take advantage of the bond, making the principal and sureties thereon parties.

Plaintiff was a materialman within section 14824, 3 Comp. Laws 1915, which provides:

"The word 'materialman' as used in this act, shall be construed to include all persons by whom any materials are furnished in or for building, altering, improving, repairing, erecting or ornamenting, or putting in any house, building, machinery, wharf or other structure or walk or walks."

Section 1 of the mechanic's lien law (Act No. 140, Pub. Acts 1919 [Comp. Laws Supp. 1922, § 14796]) covers every person who shall, as materialman, furnish materials to such original contractor or any subcontractor in carrying forward or completing any such contract. It does not extend beyond its express terms, and cover a materialman who furnishes materials, in pursuance of a contract with another materialman who furnishes materials in pursuance of a contract with a subcontractor under the original contractor. The trial court so construed the statute and denied plaintiff's right to a lien. We think the trial court was right.

2. Defendant objected to the claimed lien of John Finn & Son because no notice of *lis pendens* was filed by them or by any one in their behalf. This contention is answered by the statute (3 Comp. Laws 1915, § 14805, and *S. C. Hall Lumber Co.* v. *Gustin,* 54 Mich. 624; *Sheridan* v. *Cameron,* 65 Mich. 680; *Smalley* v. *Terra-Cotta Co.,* 113 Mich. 141; *L. J. Mueller Furnace Co.* v. *Wayne Circuit Judge,* 226 Mich. 672; *Whitehead & Kales Co.* v. *Taan,* 233 Mich. 597; *Washtenaw Lumber Co.* v. *Belding,* 233 Mich. 608), and was abandoned by defendant.

It is claimed John Finn & Son abandoned the contract for erecting the building months before their

claim of lien was filed; that their claim was not filed in the register of deeds' office within 60 days from the performance, in good faith, of the last work and the furnishing of the last materials on the contract. These claims involve disputed questions of fact. The John Finn & Son contract was dated March 30, 1922. It did not specify any date of completion. It provided the contractor, unless, delayed by fires, strikes, floods, or unavoidable casualty should complete the work to the satisfaction of the engineers-architects; the owner agreed to pay the contractor for the performance of the contract to the satisfaction of the engineers-architects; the contract provided if the engineers-architects were satisfied the contractor was neglecting or unable to provide material or perform labor when required, or was careless or incompetent, or did not prosecute the work with promptness and diligence, or comply with the contract, the owner had a right to declare the contract forfeited.

The John H. Thompson Realty Company was insolvent when the contract was made. It was hopelessly insolvent before the contract was completed. The money disbursed by John H. Thompson Realty Company was raised by the Grindleys on the $700,000 mortgage given by them to the Security Trust Company and advanced by the Security Trust Company for building purposes. When the cash of the John H. Thompson Realty Company was exhausted, it ceased to pay.

One Brayton was employed as an efficiency expert. He found fault with John Finn & Son, claiming they had been paid in full; sent out questionnaires to the subcontractors who up to that time had been satisfied; was technical in attempting to prevent John Finn & Son getting their pay. The architects canceled outstanding certificates entitling John Finn & Son to further compensation, and would issue no further certificates because the John H. Thompson Realty

Company did not have money with which to pay.
It may be these things were done to gain time,
to enable Brayton and others interested in the
John H. Thompson Realty Company to resuscitate
the dying corporation. John Finn & Son claimed
the John H. Thompson Realty Company owed them
about $45,000. The court found it was entitled
to a lien for $23,260.07. John Finn & Son could not
be expected to continue to expend money, employ labor,
and furnish material in the completion of this contract
in relation to which the John H. Thompson Realty
Company were in default, and upon which we think
it owed John Finn & Son several thousand dollars.
The architects-engineers, who were the agents of the
Thompson Realty Company for the purpose of superin-
tending the performance of this contract by John Finn
& Son, did not cancel the contract. The John H.
Thompson Realty Company did not cancel it. Brayton,
acting general manager of John H. Thompson Realty
Company, did not cancel it. On the contrary, the John
H. Thompson Realty Company, as late as November
7, 1923, insisted it was not taking the position John
Finn & Son were not to be allowed to do their work
on the building; that it was entirely up to John Finn
& Son as to whether they completed the work or not,
that, under no conditions whatever, would it in any
way prevent John Finn & Son from completing the
work. As late as October 23, 1923, the John H.
Thompson Realty Company ordered work done on the
contract by John Finn & Son. The proof sustains
the trial court in its finding that John Finn & Son
after this time did perform work on the contract, and,
becoming satisfied the John H. Thompson Realty Com-
pany was not able to refinance itself, abandoned the
contract and filed notice of claimed lien. This notice
was filed less than 60 days from the performance of
the last work under the contract. So far as the

record shows John Finn & Son acted in good faith. The John H. Thompson Realty Company became so financially involved as not to be able to pay its bills. John Finn & Son were under no obligations to complete the contract after it had been breached by the John H. Thompson Realty Company neglecting and refusing to pay in accordance with the contract. The engineers-architects could not legally withhold architects-engineers certificates of work done merely because the John H. Thompson Realty Company was without funds to pay. It is claimed no sworn certificate was filed by John Finn & Son in pursuance of section 14799, 3 Comp. Laws 1915. The proof shows the work done within the 60-day period by John Finn & Son was in response to letters from the John H. Thompson Realty Company. John Finn & Son went back and performed some labor for the subcontractors. The question was not raised in the lower court of the sufficiency of the certificate filed and served. It was there contended the sworn statement was not filed and served at all. After the proof showed it was filed and served, apparently the matter rested. The sufficiency of the form and substance of this sworn statement was not there raised. The question of its sufficiency not having been raised in the trial court, will not be considered here.

It is claimed the lien was filed for an excessive amount. Whether the amount for which the lien was filed was excessive depends upon the facts. Defendants claim John Finn & Son were not entitled to anything. John Finn & Son claimed they were entitled to approximately $45,000. The trial court held John Finn & Son were entitled to a lien for $23,260.07. They apparently in good faith claimed the larger sum. That they did so would not, under the facts herein, invalidate their lien. It is claimed the amount of the lien allowed by the trial court was too great. From the record we think the amount of the lien was reduced

by the trial court as low as was justified.	The decree below should be affirmed as to the amount of this lien.

3. The contract of lease between the Grindleys and John H. Thompson, which was assigned by John H. Thompson to the John H. Thompson Realty Company before the contracts were made by the John H. Thompson Realty Company for the erection of the building, was more than a lease. It was a contract under which the lessee agreed to build and erect a new building upon the premises to cost not less than $500,000. The contract for the construction of this building was made between the owners of the land and lessee. Under the contract the lessee was not an agent of the lessor, generally, yet the contract was one which contemplated the construction and erection of a building upon the premises in pursuance of an express written contract existing between the owner and the lessee.

In *Rollin* v. *Cross*, 45 N. Y. 766, Cross purchased land from Betts. She agreed to advance money to assist one in building a house thereon. Subsequently she acquired the title. It was held the property was subject to a lien for labor and materials used in the construction of the building.

In *Burkitt* v. *Harper*, 79 N. Y. 273, suit was brought to foreclose a mechanic's lien. Defendants owned land. They leased the same to Davis. Under the lease Davis was to erect a building thereon. The lessors had an interest in the erection of the building. It is said:

"It is thus clear that the lessors had an interest in the erection of the building—a greater interest even than the lessee. During the term of the lease the building is to them a security for the performance by the lessee of his covenants, as it is to come to them at once in case of his default. It is to belong to them at the expiration of the lease, and during the term the lessee is to keep it insured for their benefit, and to restore it if destroyed by fire. In addition to this

the lessors lived near the premises and saw the building from time to time while plaintiff was engaged in its erection, and made no objection to the erection of the same.    Under such circumstances, we think the learned judge at special term was fully warranted in finding that Davis was permitted by the owners to erect the building."

In *Hill* v. *Gill*, 40 Minn. 441 (42 N. W. 294), Mrs. Gill sold the land on contract to Barker.    The contract contemplated the construction of a building.    The court said:

"Here Mrs. Gill, in her contract of sale, obligated her vendee, Barker, to complete a dwelling upon premises which she was not to convey until the house was built and she had received the amount of the purchase price of the lot.    That Barker might comply with the terms of this contract, the plaintiffs furnished materials which were used in the house; and now, after his failure to perform, and relinquishment of all his rights to Mrs. Gill, seek to enforce a lien, which she resists upon the ground that it is unwarranted by the statute.    She attempts to retain the property, much enhanced in value through plaintiffs' materials, without paying for the improvements.    To permit her to do so would be an imposition.    She directed and demanded the erection of the dwelling-house upon her lot, as is obvious from her contract, and Barker, in pursuance of the right he acquired by the same instrument, and in performance of the conditions imposed by it, purchased building materials, now a part of the estate.    The proper and just construction to be placed upon the contract is that the purchase was authorized by Mrs. Gill, and, if this be so, the plaintiffs must be permitted to look to her title for the satisfaction of their demand.    *Henderson* v. *Connelly*, 123 Ill. 98 (14 N. E. 1, 5 Am. St. Rep. 490)."

In *Hilton* v. *Merrill*, 106 Mass. 528, there was a contract of sale of land with a provision the vendee should erect a building thereon.    It was held this was subject to a lien.    It is there said:

"It was within the contemplation of the parties, and indeed was the principal purpose of the agreement, that

Herrick should proceed and erect houses upon the land of the respondent. The houses, while in process of erection, became the property of the respondent, and remained his property until a conveyance by him. By implication from the contract, he authorized Herrick to employ, either directly or through subcontractors, the necessary workmen to erect the houses; and the labor of the workmen thus employed was performed by his consent within the intendment of the statute."

In *Smith* v. *Norris,* 120 Mass. 58, a substantially similar contract was before the court and the same ruling made.

In *Henderson* v. *Connelly,* 123 Ill. 98 (14 N. E. 1, 5 Am. St. Rep. 490), land was sold upon contract and the vendees were authorized to erect a building upon the premises. The court said:

"The only reasonable and fair construction to be placed on this clause of the contract is, that the purchaser was authorized and empowered by the vendors to enter into contracts with builders to furnish material and erect a building on the premises to which they held the legal title. If, therefore, the Hendersons authorized and empowered Sharp, the purchaser, to cause a building to be erected on property where the legal title was in them, upon what ground can they now, after the labor has been expended and materials furnished, claim that the mechanic who furnished the labor and materials which they, by contract, authorized, should look alone to the title held by the purchaser? Certainly no principle of equity or fair dealing would sanction a precedent of that character."

In *Hall* v. *Parker,* 94 Pa. St. 109, it is held (we quote from the syllabus):

"Where a tenant contracts with his landlord to build or to repair buildings for compensation to be made by the landlord, either in money or the occupation and use of the premises, the tenant is the landlord's agent, building or repairing for him, at his ultimate cost, and the building is liable to lien as in all other cases of building or repairing by contract."

In *O'Leary* v. *Roe*, 45 Mo. App. 567, land was sold by vendor to vendee on contract, and the vendee was, within 90 days, to build upon the lots.    It is said:

"The only fair and reasonable construction to be placed on this provision of the contract is that the purchaser was authorized and empowered, by the vendor, to enter into contracts with builders to furnish material and erect the buildings or any part thereof, on the lots to which he had the legal title.    It was within the expressed contemplation of the parties to the contract, that the purchaser should proceed to erect the houses upon the lots of the vendor.    By implication from the contract, the vendor authorized the purchaser to employ builders, to furnish materials and erect the buildings.    The vendor by his contract has subjected the title to the lots to the lien of the plaintiff.    The plaintiff is brought within the provisions of the statute. *Henderson* v. *Connelly*, 123 Ill. 98 (14 N. E. 1, 5 Am. St. Rep. 490) ; *Hilton* v. *Merrill*, 106 Mass. 528; *Smith* v. *Norris*, 120 Mass. 58; *Hill* v. *Gill*, 40 Minn. 441 (42 N. W. 294) ; *Hackett* v. *Badeau*, 63 N. Y. 476."

In *Ward* v. *Nolde*, 259 Mo. 285 (168 S. W. 596), the owner made a 20-year lease and provided that the lessee should make and construct substantial alterations and improvements in the building.    The question arose as to the validity of a lien against the owner's title and it was held that:

"*   *   *   'the rule is very generally recognized and established that where the landlord binds the tenant to make substantial improvements upon the property, that he thereby constitutes the latter his agent within the meaning of the mechanics' lien law, and his property is subject to the lien for labor performed and material furnished in making such improvements under the contract with the tenant.' "

This case was quoted with approval in *Allen Estate Association* v. *Boeke & Son*, 300 Mo. 575 (254 S. W. 858).

John Finn & Son, John H. Busby Company, Inc., and Glanz & Killian Company were all direct con-

tractors with John H. Thompson Realty Company, and Interstate Plastering Company was a subcontractor under John Finn & Son.    Under the contract of the Grindleys with John H. Thompson whereby he agreed to erect a building to cost not less than $500,000; and the contracts made by his assignee the John H. Thompson Realty Company with the three lien claimants first above named and the contract by John Finn & Son with Interstate Plastering Company, all of these parties are under Act No. 140, Pub. Acts 1919 (Comp. Laws Supp. 1922, § 14796), entitled to a lien upon both the building and the real estate, as found by the trial court.

The decree of the trial court is affirmed, as modified by the stipulation herein mentioned.

FEAD, C. J., and NORTH, FELLOWS, WIEST, CLARK, MCDONALD, and SHARPE, JJ., concurred.

## ADDITIONAL OPINION.

POTTER, J.    This is a part of *Hart* v. *Reid, ante,* 175.    J. L. Hart, doing business as the J. L. Hart Lumber Company, sold to Francis G. Brown, doing business as the J. M. Diver Lumber Company, lumber to apply on a contract between S. E. Benjamin & Company, a subcontractor under John Finn & Son, principal contractor.    J. L. Hart, doing business as the J. L. Hart Lumber Company, filed a claim of lien and attempted to foreclose the same.    This matter was disposed of in *Hart* v. *Reid, supra.*    Francis G. Brown, doing business as the J. M. Diver Lumber Company, became bankrupt and Clarence A. Reid was appointed trustee in bankruptcy.    He, Reid, as trustee, filed a claim of lien and this was released and discharged under the provisions of section 14800, 3 Comp. Laws 1915, by a bond dated October 5, 1922, in which Saul E. Benjamin was principal and the General Casualty & Surety Company was surety in the sum of $20,708,

and the lien claimant thereupon had the same recourse against the bond as he would have had, but for the giving of the bond, against the property.   The giving of the bond in no way changed the rights of the lien claimant.   The trial court held Reid was not entitled to a lien and, there being no lien, there could be no liability upon the bond.   In this we think he was correct, and

The decree of the trial court will be affirmed.

FEAD, C. J., and NORTH, FELLOWS, WIEST, CLARK, McDONALD, and SHARPE, JJ., concurred.