WICKES CORPORATION v COLEMAN VILLAGE, INC

Docket No. 54356. Submitted June 11, 1981, at Lansing.—Decided November 3, 1981.

Coleman Village, Inc., owner of a parcel of agricultural land, contracted with Countryside Home Improvements to remodel an apartment over a garage attached to a farm house. The contract called for a downpayment of $8,000. Five days after the remodeling had begun and before any materials had been ordered or delivered to the job site, the house and garage were destroyed by fire. At that time Countryside had done about $2,000 worth of work. The contract was mutually rescinded and it was agreed that Countryside would secure building materials for Coleman to build another storage building on the property in lieu of repaying $6,000. This building was to be constructed by a different contractor. Countryside caused Wickes Lumber, Division of Wickes Corporation, to deliver approximately $6,000 worth of building materials to Coleman's property. Wickes perfected a mechanics' lien on Coleman's property and brought an action in the Lenawee Circuit Court against Coleman and others to foreclose the lien. The court, Rex B. Martin, J., dismissed plaintiff's complaint, holding that plaintiff was not protected by the mechanics' lien statute. Plaintiff appeals. *Held:*

Plaintiff is a materialman under the mechanics' lien law but is not entitled to a mechanics' lien because it did not supply materials to a principal contractor or subcontractor in order to carry forward or complete the contractor's contract with the owner.

Affirmed.

1. MECHANICS' LIENS — STATUTES — LEGISLATIVE INTENT.

The Legislature directed that the mechanics' lien statute, because of its remedial nature, must be construed liberally to carry out its intended purpose of benefiting and protecting subcontractors, materialmen, and laborers (MCL 570.27; MSA 26.307).

REFERENCES FOR POINTS IN HEADNOTES
[1] 53 Am Jur 2d, Mechanics' Liens § 17 *et seq.*
[2] 53 Am Jur 2d, Mechanics' Liens §§ 71, 72.

2. Mechanics' Liens — Materialmen.

A materialman under the mechanics' lien law is one by whom any material is furnished in or for building, altering, improving, repairing or erecting certain defined structures; to fall within the ambit of the mechanics' lien law, one must not only be a materialman but also furnish materials to a principal contractor or subcontractor in order for that contractor or subcontractor to carry forward or complete his contract with the owner (MCL 570.1, 570.29; MSA 26.281, 26.309).

*Jameson, Pickard & Lucas,* for plaintiff.

*Walker & Watts,* for defendant.

Before: Danhof, C.J., and M. F. Cavanagh and D. R. Freeman,* JJ.

Per Curiam. Plaintiff, Wickes Lumber, appeals as of right the trial court's refusal to foreclose a mechanics' lien claimed by it on materials supplied to Countryside Home Improvements and used in construction on land owned by defendant Coleman Village, Inc.[1]

On July 5, 1978, defendant, a closely held family corporation owning a 100-acre parcel of agricultural land, contracted with Countryside Home Improvements (Countryside) to remodel a farm house located on its property. The contract price was $23,500 and called for an initial downpayment of $8,000. The contract provided for the remodeling of an apartment over the attached garage of a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Plaintiff filed its complaint in January of 1980. Joined in the action as defendants were Coleman Village, Inc., owner of the subject property, First Federal Savings and Loan Association of Lenawee County, holder of a mortgage on the property, Paul Jacobs and Richard Isbinski, sole partners in the partnership of Countryside Home Improvements. In July of 1980, plaintiff stipulated that First Federal's mortgage had priority over its alleged lien. Jacobs and Isbinski never entered an appearance or answered the complaint. Therefore, all references to defendant in this opinion will refer to Coleman Village, Inc., only.

farm house. Countryside, as contractor, was to furnish all labor and materials for the work. Specific materials to be used in the remodeling included a sliding glass door and a ten-foot by twelve-foot deck.

Five days after Countryside began remodeling, two fires destroyed the farm house and garage that were being worked on. At this point no materials had yet been ordered or delivered to the job site. Countryside had merely removed the walls and plaster in preparation for the remodeling. According to defendant's president, the remodeling contract was mutually rescinded after the fires since performance was impossible. However, since defendant had already paid Countryside $8,000 and Countryside had only completed $2,000 worth of work on the project prior to the fires, Countryside owed defendant $6,000.

Countryside had no funds with which to reimburse defendant's downpayment, so defendant and Countryside agreed that Countryside would secure barn building materials for defendant. Defendant had decided to construct another storage building, a pole barn to be located adjacent to its main barn, approximately 200 yards away from the destroyed farm house. This storage barn was to be constructed by a construction company other than Countryside. This other construction company was to provide all labor and the remainder of any materials needed. No work was done by Countryside on this new structure.

Pursuant to its agreement with defendant, Countryside obtained approximately $6,000 worth of construction materials from plaintiff. Plaintiff delivered the materials to defendant's property pursuant to the purchase order drawn on Countryside's line of credit. Plaintiff did not provide a

sliding glass door or lumber to construct the ten-foot by twelve-foot deck provided for in the original contract between Countryside and defendant.

In early 1979, plaintiff served defendant with a notice of intent to claim a lien and a statement of lien. Prior to trial the parties stipulated that these documents were timely and correctly filed. In January, 1980, plaintiff filed suit to foreclose the mechanics' lien, seeking compensation of $4,675.34, the balance due on the purchase of approximately $6,000 in materials. The trial court held that plaintiff did not have a valid mechanics' lien, reasoning that plaintiff was not a contractor, subcontractor or materialman protected by the mechanics' lien statute. MCL 570.1; MSA 26.281.

On appeal, plaintiff argues that the trial court improperly construed the mechanics' lien statute. Plaintiff urges that the purpose of that statute would be served by a finding that any material-man, such as it, who supplies materials to the ultimate user through an individual or firm that had had a contractor's relationship with the ultimate user, should be entitled to a lien. Plaintiff reasons that such a rule would protect an unsuspecting materialman who delivers materials to a job site at the request of a contractor, then subsequently discovers that he has no lien because the contractor and the ultimate user have rescinded their contract.

MCL 570.1; MSA 26.281 provides in pertinent part:

"Every person who shall, in pursuance of any contract, express or implied, written or unwritten, existing between himself as contractor, and the owner, part owner or lessee of any interest in real estate, build, alter, improve, repair, erect, * * * or who shall furnish any labor or materials in or for building, altering,

improving, repairing, erecting, * * * any house, * * * building, * * * and every person who shall be subcontractor, laborer, or material man, perform any labor or furnish materials or shall rent or lease equipment to such original or principal contractor, or any subcontractor, in carrying forward or completing any such contract, shall have a lien therefor upon such house, * * * building * * *."

Thus, generally, to fall within the provisions of MCL 570.1, a party must be either a contractor seeking to perform a contract between himself and the owner, or a subcontractor, materialman or laborer who is assisting the contractor in carrying forward or completing performance of his contract with the owner. In this regard, we are mindful that because of its remedial nature, the provisions of MCL 570.1 must be liberally construed in order to achieve its intended purpose of benefiting and protecting contractors, materialmen and laborers. *Spartan Asphalt Paving Co v Grand Ledge Mobile Home Park,* 400 Mich 184; 253 NW2d 646 (1977), *reh den* 400 Mich 1029 (1977), MCL 570.27; MSA 26.307.

In the instant case, plaintiff is clearly not a contractor, subcontractor or laborer. Therefore, if it is to fall within the ambit of MCL 570.1 and have an enforceable lien, it must be found to be a materialman.

The term materialman is defined at MCL 570.29; MSA 26.309 which provides in pertinent part:

"The word 'material-man' as used in this act, shall be construed to include all persons by whom any materials are furnished in or for building, altering improving, repairing, erecting * * * any house, * * * building, * * * or other structure * * *."

It is clear that plaintiff meets this definition of

materialman. See also *Stephens Lumber Co v Town-send-Stark Corp,* 228 Mich 182; 199 NW 706 (1924). However, this, in itself, is not enough to make MCL 570.1 applicable. As the language of the statute clearly indicates, to fall within the ambit of MCL 570.1, one must not only be a materialman but must also furnish materials to a principal contractor or subcontractor in order that that contractor or subcontractor may carry forward or complete his contract with the owner. See *Hart v Ried,* 243 Mich 175; 219 NW 692 (1928).

In the instant case the trial court, acting as trier of fact, found that the contract between defendant and Countryside had been mutually rescinded after the fires. It also found that when Countryside purchased the materials from plaintiff, Countryside was a mere purchaser and not acting in its capacity of a contractor or subcontractor to defendant. These findings of fact are not clearly erroneous, and, therefore, may not be set aside by this Court. GCR 1963, 517.1.

Since plaintiff was not furnishing materials to a contractor or subcontractor in order to aid that contractor or subcontractor in "carrying forward or completing" a contract with the owner, plaintiff did not have a right to a mechanics' lien under MCL 570.1.

In reaching this conclusion we note that this case presents a unique fact situation. Furthermore, although plaintiff is an aggrieved and arguably innocent party, so is defendant. There is no indication in the record, nor does plaintiff allege on appeal, that defendant intentionally acted in concert with Countryside to circumvent the mechanics' lien statute. After the fires there was no longer a contract for remodeling between defendant and Countryside, despite the fact that Coun-

tryside owed defendant $6,000. As far as defendant was concerned, Countryside owed it $6,000 and chose to satisfy its debt by supplying building materials to be used by another contractor on a completely different project. Under these facts it was not necessarily defendant's responsibility to check Countryside's credit rating. On the other hand, plaintiff could have inquired into the situation had it wanted to be more cautious and protect its interest.

Plaintiff's contention that a "liberal" construction of the mechanics' lien statute requires a finding that plaintiff is entitled to a lien is without merit. For us to adopt plaintiff's position would require a significant extrapolation and expansion of the holding in *Spartan Asphalt, supra,* something we decline to do.

For the foregoing reasons, the decision of the trial court is affirmed. Costs to defendant.