Bruce Thomas SCHNEIDER, Jeffrey Lee Schober, Sallie Ann Schober, Robert H. Holzworth, and Lois Ann Holzworth, Petitioners,

v.

J.W. METZ LUMBER COMPANY, a Colorado corporation, Respondent.

No. 84SC211.

Supreme Court of Colorado, En Banc.

March 3, 1986.

Rehearing Denied March 31, 1986.

Jonathan T. Belknap, Fraser, for petitioners, Jeffrey Lee Schober, Sally Ann Schober, Robert H. Holzworth, and Lois Ann Holzworth.

McMichael,& Benedict, Mitchell Benedict, III, Denver, for petitioner, Bruce Thomas Schneider.

Graber & Graber, George Moore Graber, Arvada, for respondent.

ERICKSON, Justice.

We granted certiorari to review *J.W. Metz Lumber Co. v. Schneider*, 687 P.2d 490 (Colo.App.1984), which upheld the foreclosure of statutory mechanic's liens on real property owned by the petitioners. We hold that respondent is not entitled to mechanic's liens on the petitioners' property. We also conclude that the petitioners qualify as buyers in the ordinary course of business under the Colorado Uniform Commercial Code. We therefore reverse and remand the case to the court of appeals with directions to return the case to the district court for cancellation of respondent's mechanic's liens and dismissal of the foreclosure actions against the petitioners' property.

## I.

### Facts

Respondent, J.W. Metz Lumber Company, brought three separate civil actions in Grand County District Court to foreclose mechanic's liens perfected on property owned by the three petitioners, Schneider, the Schobers, and the Holzworths.

The petitioners entered into materials agreements with Colorado Log Homes (CLH) to purchase prefabricated kits to construct log houses. Metz was the wholesale lumber company that provided material for the prefabricated kits to CLH. The contracts with the Schobers and Schneider bore the title "Materials Agreement," which provided for preliminary construction plans [1] and was by stipulation identi-

---

1. The construction plans clause provided:

   *Preliminary Plans*

   2. Colorado Log Homes shall provide Purchaser with preliminary plans of the Colorado Log Home purchased which are consistent with the general description specified herein. Purchaser shall be entitled to suggest modifi-

cations of such preliminary plans consistent with the original order without additional cost until satisfied with the plans presented. At such time Purchaser shall sign the approved plans. Any modifications of the plans shall be made later only at the purchaser's expense, at a price quoted by Colorado Log

fied as a retail sale of materials to the petitioners, who obtained title at the time of payment. Neither the Schobers nor Schneider sought to have CLH modify the "stock" preliminary plans. The CLH contract with the Holzworths was for the sale of materials without any reference to construction plans.

All of the materials supplied by CLH were "f.o.b. Englewood Colo." CLH arranged for its wholesaler, Metz Lumber, to deliver the materials to the petitioners' building sites for a delivery charge which was to be paid by the petitioners. CLH and Metz agreed that CLH was to be solely liable to Metz for the wholesale price of the materials. Metz transported the supplies to the building sites and obtained checks made out to CLH for the contract price (including sales tax) of the kits. Metz then unloaded the materials and was paid the delivery charges by the petitioners. Two of the petitioners contracted with a third company, Timber Construction Inc., to assemble the kits, and the third owner assembled the house kit himself.

Metz billed CLH after delivering the materials to the petitioners. CLH did not pay Metz before CLH filed for bankruptcy, and Metz subsequently filed mechanic's liens against the real property owned by the petitioners and instituted separate actions to foreclose the mechanic's liens. *See* §§ 38–22–101, –103, –105, 16A C.R.S. (1982). The Grand County District Court consolidated the three foreclosure actions. The cases were submitted to the district court on stipulated facts, briefs, and affidavits. By order of August 20, 1982, the district court held that the Metz mechanic's liens on the petitioners' properties were valid and enforceable.

Petitioners argued in the court of appeals that Metz was not entitled to the mechanic's liens provided by section 38–22–101, 16A C.R.S. (1982). The court of appeals affirmed the trial court's findings. The court held that CLH, which provided

construction plans to the petitioners, was an architect and therefore a primary contractor under the statute, and that Metz, as a subcontractor materialman to CLH, could file valid liens against the petitioners' property. *Metz Lumber*, 687 P.2d at 491.

## II.

### Mechanic's Liens

Petitioners claim that CLH, which sold only construction materials and "stock" preliminary construction plans under the "materials agreements," could not be considered a primary contractor or agent for the petitioners when CLH had nothing to do with assembling the kits. Therefore Metz had no contractual relationship with petitioners apart from the delivery agreement and could not assert mechanic's liens against petitioners' property.

The Colorado general mechanic's lien statute provides, in part:

[A]ll persons of every class performing labor upon or furnishing ... materials to be used in construction ... of any building ... or any other structure or improvement upon land ... shall have a lien upon the property ... for which they have furnished materials ... for the value of such ... material furnished, whether at the instance of the owner or of any other person acting by his authority or under him, as agent, contractor or otherwise for the ... materials furnished by each, respectively, whether supplied ... or furnished ... *at the instance of the owner of the building or other improvement, or his agent; and every contractor, architect, engineer, subcontractor, builder, agent or other person having charge of the construction ... either in whole or in part, of said building or other improvement shall be held to be the agent of the owner for the purposes of this article.*

§ 38–22–101(1), 16A C.R.S. (1982) (emphasis added). The statute provides that mate-

---

Homes. Any changes in material requirements necessitated by such plan changes will

require an adjustment of the purchase price.

rialmen can claim a lien if the material is furnished at the instance of the owner or the owner's agent. CLH, under contract with petitioners, could claim such a lien. However, Metz Lumber, which wholesaled the materials to CLH and delivered them at CLH's arrangement, had no contractual relationship with petitioners.

Metz, lacking any agreement with petitioners apart from an agreement to deliver the materials for a fee, can only claim a lien against petitioners if CLH can be classified as a "contractor, architect, engineer, subcontractor, builder, agent or other person having charge of the construction...." § 38–22–101(1). CLH could then be considered the agent of the petitioners for purposes of the mechanic's lien statute. The court of appeals classified CLH as a "principal contractor," relying on section 38–22–108(1), which provides in part:

> Every person given a lien by this article whose contract, either express or implied, is with the owner ... is a principal contractor....

The court concluded that since Metz delivered materials to the petitioners "at the instance of CLH as contractor," Metz was entitled to the liens on petitioners' property. 687 P.2d at 491.

We reject the court of appeals use of the definition of "principal contractor" contained in section 38–22–108(1) to determine who is entitled to a lien under section 38–22–101(1). Section 38–22–108(1) defines the term "principal contractor" for purposes of ranking liens held by different lien claimants. The definition assumes that a party's entitlement to a lien has already been determined under section 38–22–101(1). CLH was entitled to a lien, but not because it was a contractor in charge of construc-

tion under section 38–22–101(1). CLH simply provided predesigned, preliminary construction plans to each petitioner. CLH did not modify the stock plans and was in no way "in charge of the construction" of the kits sold to petitioners. Metz supplied the lumber under a contract with CLH and not at the instance of the "owner" or "person having charge of the construction" under section 38–22–101(1).[2] Accordingly, Metz cannot assert a mechanic's lien against petitioners' property.

■ Colorado courts have long held that the mechanic's lien statute, a derogation of the common law, is to be strictly construed in determining who is entitled to a lien. *Pitschke v. Pope*, 20 Colo.App. 328, 78 P. 1077 (1904); *Cary Hardware Co. v. McCarty*, 10 Colo.App. 200, 50 P. 744 (1897).[3] Similar statutory mechanic's lien provisions have been interpreted to deny "submaterialmen" of materialmen a lien. *Georgia-Pacific Corp. v. Dan Austin Properties, Inc.*, 126 Ga.App. 191, 190 S.E.2d 131 (1972), held that the Georgia lien provision applied only to materialmen who supply materials directly to the property owner or party supervising the improvement. The court held that the Georgia General Assembly should have specified in the statute if they had intended the lien to extend to materials suppliers who have no contractual or other relationship with the property owner. 190 S.E.2d at 132.

Similarly, in *Wickes Lumber v. Coleman Village, Inc.*, 111 Mich.App. 115, 314 N.W.2d 541 (1981), a materials supplier under contract to another materialman delivered goods directly to the property owners. As is the case here with Metz Lumber, the property owner in *Wickes Lumber* had contracted with a completely uninvolved third

---

**2.** Since Metz sold the lumber to CLH at wholesale, Metz did not charge sales tax to CLH.

**3.** We recognize the difficulty in some cases of determining whether a supplier of components of a structure is a materialman or a subcontractor for purposes of the mechanic's lien statute. The court of appeals has held that construction of such components at a location other than the building site can give rise to subcontractor status even though the one accomplishing such

work does not undertake to incorporate that portion of the projected structure into the building itself. *Kobayashi v. Meehleis Steel Co.*, 28 Colo.App. 327, 334–35, 472 P.2d 724, 728 (1970) (involving off-site construction of precast, prestressed concrete columns). Since CLH performed no work in the assembling of the completed structure, no such difficulty exists in the present case; CLH is simply a materialman.

party to supervise construction. The court held that Wickes was not entitled to a lien under the Michigan statute since Wickes supplied the goods at the instance of neither the property owner nor the contractor supervising construction. *See also City of Evansville v. Verplank Concrete & Supply, Inc.,* 400 N.E.2d 812 (Ind.App.1980); *Refractory Construction Inc. v. Cities Service Oil Co.,* 278 So.2d 510 (La.Ct.App. 1973); *American Buildings Co. v. Wheelers Stores,* 585 P.2d 845 (Wyo.1978).

### III.

### Sale of Goods

As a submaterialman not entitled to any statutory lien rights, Metz Lumber is a seller of goods covered by Article Two of the Colorado Uniform Commercial Code, which applies to "transactions in goods." § 4-2-102, 2 C.R.S. (1985 Supp.). "Goods" are defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale...." § 4-2-105, 2 C.R.S. (1973).

Section 4-2-403, 2 C.R.S. (1973), in part provides as follows:

> (2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.
>
> (3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence....

While Comment Two to section 4-2-403 requires that the goods be in CLH's "inventory" to constitute an entrustment, "nothing in the sections themselves or the Code definition of 'buyer in ordinary course' requires the goods to be physically located in a seller's inventory." J. White & R. Summers, *Uniform Commercial Code* 143 (1980). *See also Fuqua Homes, Inc. v. Evanston Building & Loan Co.,* 52 Ohio App.2d 399, 370 N.E.2d 780 (1977) (dealer need not receive actual physical possession to gain "entrustee" status). Metz, when it delivered the materials to the petitioners (under its contract with CLH), entrusted possession of the goods to CLH, which had not yet paid Metz.

The U.C.C. further defines "buyer in ordinary course of business" as:

> [A] person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind.... "Buying" may be for cash or by exchange of other property or on secured or unsecured credit and includes receiving goods or documents of title under a preexisting contract for sale....

§ 4-1-201(9), 2 C.R.S. (1985 Supp.). A review of the record shows: (1) petitioners purchased the materials from CLH in good faith; (2) petitioners had no knowledge that CLH had not paid Metz; (3) CLH was in the business of selling the materials wholesaled by Metz; and (4) petitioners paid CLH in full. As buyers in the ordinary course of CLH's business, petitioners received title to the materials when Metz made delivery and the petitioners paid CLH, the "entrustee" of the goods. § 4-2-403(2), 2 C.R.S. (1973).

In conclusion, Metz Lumber has no right to claim a statutory mechanic's lien on petitioners' property and also has no ownership interest in or right to payment for the materials delivered to the petitioners.

Accordingly, we reverse the judgment of the court of appeals and return the case to the court of appeals with directions to remand to the Grand County District Court for cancellation of Metz Lumber's mechanic's liens and dismissal of the foreclosure actions against the properties of the petitioners Schneider, the Schobers, and the Holzworths.