**ELM DISTRIBUTORS, INC., a Colorado corporation, Petitioner,**

**v.**

**TRI–CENTENNIAL CORPORATION, a Colorado corporation, Respondent.**

**No. 86SC394.**

Supreme Court of Colorado, En Banc.

Jan. 23, 1989.

Fasing and Fasing, P.C., Gregory J. Fasing, Timothy L. Fasing, Denver, for petitioner.

Robert W. Johnson, Colorado Springs, for respondent.

KIRSHBAUM, Justice.

In *Tri–Centennial Corp. v. Elm Distributors, Inc.,* No. 85CA0855 (Colo.App. Sept. 11, 1985), the Court of Appeals reversed the trial court's order of summary judgment for petitioner Elm Distributors, Inc. (Elm) and against Tri–Centennial Corporation (Tri-Centennial) and remanded the case to the trial court with directions to enter a summary judgment in favor of Tri-Centennial and against Elm. Having granted certiorari to review these determi-

nations, we affirm in part, reverse in part and remand with directions.

## I

For purposes of evaluating the rulings of the trial court and the Court of Appeals with respect to the parties' summary judgment motions, the following facts may be gleaned from the evidentiary matter submitted to the trial court.[1]

In 1982, Tri–Centennial, a real estate developer incorporated in Colorado and based in Colorado Springs, owned real property located on Bennett Street in Colorado Springs. Early that year it began to build duplexes pursuant to plans for development of the property.

The project plans required installation of freestanding fireplaces in the duplexes. Tri–Centennial initially attempted to purchase fireplace accessories and flues from Pre–Way Distributors (Pre–Way), a company located in Wisconsin. Pre–Way told Tri–Centennial to deal with Elm, a Colorado corporation. However, as a matter of policy Elm did not sell products directly to new customers. When Tri–Centennial contacted Elm, an Elm sales representative referred Tri–Centennial to Louis Lefkowitz at Contemporary Mountain Designs (CMD).[2] Lefkowitz regularly purchased Pre–Way products from Elm on open account at a fifty percent discount.

On March 1, 1982, Tri–Centennial entered into a written agreement to purchase twenty Pre–Way freestanding fireplaces and all associated pipe and fittings from CMD at a cost of $13,695.20. The price included tax, but not installation.[3]

CMD purchased the Pre–Way fireplaces from Elm at a cost of $10,800. No sales tax was charged to CMD. Elm's invoices require delivery of all merchandise to the project site. Although some of the materials were initially delivered to a CMD storage site, all materials ultimately were delivered to the project site.

Tri–Centennial paid CMD for the items by three separate checks, each of which contained a restrictive endorsement in the form of a lien waiver. On December 15, 1982, Lefkowitz signed a lien waiver on behalf of himself, CMD and Elm acknowledging receipt of payment in full for the materials. In his deposition, Lefkowitz testified that although he signed the waiver form on behalf of Elm because he needed the funds and because Tri–Centennial refused to release the funds without his signature, he informed Tri–Centennial at the time that he was not Elm's agent.

Neither Lefkowitz nor CMD paid Elm, and early in 1983 both CMD and Lefkowitz initiated bankruptcy proceedings. Elm filed a mechanic's lien statement in El Paso County on February 9, 1983, pursuant to section 38–22–101, 16A C.R.S. (1982), after mailing notice of intent to file such lien to CMD and Tri–Centennial. Elm also recorded a notice of *lis pendens* on March 11, 1983. Tri–Centennial subsequently filed this civil action against Elm, CMD and Lefkowitz seeking damages of $50,000 against Elm for negligent conduct; requesting a declaration that the mechanic's lien is null and void; and seeking compensatory and punitive damages from Lefkowitz and CMD on grounds of fraud, misrepresentation and concealment.

Elm denied the allegations of the complaint and filed counterclaims and cross claims against Tri–Centennial, Lefkowitz

1. The record contains several affidavits; a deposition of Louis Lefkowitz, President of Contemporary Mountain Designs, taken in connection with federal bankruptcy proceedings involving Lefkowitz and his company; and the stipulation of facts entered into by Tri–Centennial and Elm.

2. Jeffrey D. Barkman, stockholder, officer, director and purchasing agent of Tri–Centennial, averred in an affidavit that an Elm representative said: "Speak to Louis Lefkowitz at Contemporary Mountain Designs. He is our largest dealer and can give you the best deal."

3. Tri–Centennial also agreed to pay CMD $20,369 for the delivery and installation of several kitchen and bath cabinets. Barkman's affidavit also avers that Tri–Centennial had an open account with Crissey Fowler Lumber Co. and that it would have purchased these items from Crissey Fowler but for representations by agents of Elm that CMD would agree to more favorable terms.

and CMD. Elm's pleadings allege that it supplied materials for the project at the request of both Tri–Centennial and Lefkowitz, claim damages of $12,246.89 against "Louis Alan Lefkowitz, dba Contemporary Mountain Design," and seek a decree foreclosing the mechanic's lien.

Elm and Tri–Centennial ultimately executed a stipulation of facts, and both filed motions for summary judgment against each other and against Lefkowitz and CMD. The trial court granted Elm's motions and entered judgments for Elm against Lefkowitz for $12,246.89 plus interest and costs and against Tri–Centennial for $10,877.89 plus interest and costs. The trial court denied Tri–Centennial's motion insofar as it sought entry of summary judgment against Elm but entered judgment for Tri–Centennial against Lefkowitz for $10,877.89 plus interest and costs.

Tri–Centennial appealed the judgment entered against it and in favor of Elm, asserting that summary judgment should have been granted for Tri–Centennial and against Elm.[4] The Court of Appeals agreed with Tri–Centennial's argument and reversed the trial court's judgment. Relying on *Schneider v. J.W. Metz Lumber Co.*, 715 P.2d 329 (Colo.1986), the Court of Appeals concluded that Lefkowitz was not Tri–Centennial's agent for purposes of the mechanic's lien statute and remanded the case to the trial court with directions to enter summary judgment dismissing Elm's claim for damages against Tri–Centennial.

## II

Elm argues that the Court of Appeals erred because the undisputed evidence establishes that Lefkowitz acted as Tri–Centennial's agent in this transaction. We agree that the Court of Appeals erred in directing the trial court to enter summary judgment dismissing Elm's claim against Tri–Centennial, but reject the argument that the trial court's initial judgment in favor of Elm and against Tri–Centennial should be reinstated.

**4.** Neither Lefkowitz nor CMD appealed.

Section 38–22–101(1), 16A C.R.S. (1982), provides in pertinent part as follows:

> [A]ll persons of every class performing labor upon or furnishing ... materials to be used in construction ... of any building ... or any other structure or improvement upon land ... shall have a lien upon the property ... for which they have furnished materials ... for the value of such ... material furnished, whether at the instance of the owner, or of any other person acting by his authority or under him, as agent, contractor, or otherwise for the ... materials furnished by each, respectively, whether supplied ... or furnished ... at the instance of the owner of the building or other improvement, or his agent; and every contractor, architect, engineer, subcontractor, builder, agent, or other person having charge of the construction ... either in whole or in part, of said building or other improvement shall be held to be the agent of the owner for the purposes of this article.

In *Schneider v. J.W. Metz Lumber Co.*, 715 P.2d 329 (Colo.1986), we held that a materialman seeking to foreclose a mechanic's lien filed pursuant to this statute must establish that the materials in question were furnished at the instance of the owner or the owner's agent. We also held that in the absence of an agreement with the owner, the materialman can claim a statutory lien only if the recipient of the materials is determined to be a "contractor, architect, engineer, subcontractor, builder, agent or other person having charge of the construction ... either in whole or in part." *Id.* at 332. The parties agree that Elm had no agreement with Tri–Centennial and that Elm supplied the materials in question pursuant to the request of CMD. It is also undisputed that Lefkowitz acted on behalf of CMD. Thus, the issue in this case is whether CMD may be classified as one of the entities specified in section 38–22–101(1). The trial court's order, rendered prior to our decision in *Schneider*, contained no findings of fact respecting the status of CMD.

The Court of Appeals concluded that "the record is void of any indication that Lefkowitz had charge of any phase of construction. At the most, Lefkowitz delivered the fireplaces to the [project site]. Therefore, Lefkowitz was not Tri–Centennial's agent for purpose of the mechanic's lien statute...." We do not so view the record.

A lien waiver prepared by Tri–Centennial contains the following language:

Contemporary Mountain Designs as a subcontractor of Tri–Centennial Corporation hereby warrants and covenants that their suppliers and workmen concerning the [property]....

....

For the above-referenced properties, Contemporary Mountain Designs has supplied certain kitchen cabinets and [fireplace] accessories including all labor and materials associated therewith....

The record also contains an affidavit of Jeffrey D. Barkman who, on behalf of Tri–Centennial, participated in the arrangements for the delivery of the materials. Barkman's affidavit contains the following averments:

16. During the construction of the two projects, [Barkman] did occasionally see sales representatives from Elm Distributors. At all times pertinent, however, those sales representatives of Elm Distributors were present at the site at the direction, control, and request of Louis Lefkowitz, d/b/a Contemporary Mountain Designs. At no time did [Tri–Centennial] request the assistance, advice or counseling of Elm Distributors after such time as [Tri–Centennial's] initial request to purchase items directly from Elm were turned down.

17. At all times pertinent, [Tri–Centennial] corresponded directly with Louis Lefkowitz, his agents and/or employees concerning any problems dealing with the manufacture, maintenance, and/or installation of the desired items.

The record also establishes that Tri–Centennial required CMD to obtain worker's compensation and comprehensive liability insurance with respect to any accident occurring at the site of the project.

Summary judgment may be granted only if the record establishes that there is no dispute as to any material fact respecting the legal issue to be determined. C.R.C.P. 56; *Camacho v. Honda Motor Co.*, 741 P.2d 1240 (Colo.1987), *cert. dismissed,* — U.S. ——, 108 S.Ct. 1067, 99 L.Ed.2d 229 (1988). If any doubts exist concerning the absence of disputes over a material fact, such doubts must be resolved against the moving party. *Jones v. Dressel,* 623 P.2d 370 (Colo.1981).

The critical issue raised by the summary judgment motions of Elm and Tri–Centennial is the nature of the relationship that existed between CMD and Tri–Centennial. The Court of Appeals recognized this aspect of the case by commenting that if Elm provided fireplaces to Tri–Centennial at the instance of an agent of Tri–Centennial, "Elm would have a valid mechanic's lien against Tri–Centennial." *Tri–Centennial Corp. v. Elm Distribs., Inc.,* No. 85CA0855, slip. op. at 1 (Colo.App. Sept. 11, 1985). Stating that the record contained no evidence supporting Elm's theory that Lefkowitz was responsible for part of the construction at the project site, the Court of Appeals concluded that as a matter of law he was not an agent of Tri–Centennial pursuant to section 38–22–101(1).

We disagree with the Court of Appeals conclusion. The evidence in the record referred to above indicates the existence of genuine disputes of facts material to the determination of the nature of Lefkowitz's relationship with Tri–Centennial. Furthermore, the trial court made no specific findings regarding that relationship. In these circumstances we conclude that while the Court of Appeals properly reversed the trial court's entry of summary judgment for Elm against Tri–Centennial, it erred in directing the trial court to enter summary judgment in favor of Tri–Centennial and against Elm.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed insofar as it reverses the trial court's summary judgment for Elm against Tri–Centennial and is reversed insofar as it directs entry of summary judgment for Tri–Centennial against Elm. The case is remanded to the Court of Appeals with directions to remand

to the trial court for further proceedings consistent with this opinion.

ERICKSON, J., specially concurs and VOLLACK, J., joins in the special concurrence.

ERICKSON, Justice, specially concurring:

An extremely complex business transaction was summarized in a stipulation supported by affidavits and depositions and was the basis for cross-motions for summary judgment. Despite the stipulation between Tri–Centennial Corporation and Elm Distributors, Inc. and the affidavits and depositions, controverted issues of fact existed which precluded entry of summary judgment. *Jones v. Dressel*, 623 P.2d 370 (Colo.1981). When a stipulation is ambiguous or incomplete and nothing in the record eliminates the contested issues of fact, summary judgment should not be entered. *Williams v. White Mountain Const. Co.*, 749 P.2d 423, 430 (Colo.1988) (Mullarkey & Lohr, JJ., concurring and dissenting). Accordingly, I too would set aside the summary judgment entered by the trial court and would not enter summary judgment as ordered by the court of appeals, and would remand for trial on the merits.

I am authorized to say that Justice VOLLACK joins in this special concurrence.