JOSEPH P. LEE, Individually and as Administrator of the Estate of JOSEPH J. LEE, Deceased, Respondent, v CITY OF NEW YORK et al., Appellants.

Second Department, October 9, 1990

## APPEARANCES OF COUNSEL

*Peter L. Zimroth, Corporation Counsel (Larry A. Sonnen-shein* and *Goldi S. Juer* of counsel), for appellants.

*Sullivan & Liapakis, P. C. (Edward P. Milstein, Stephen C. Glasser* and *Lawrence M. Karam* of counsel), for respondent.

## OPINION OF THE COURT

BALLETTA, J.

On or about September 4, 1981, the defendant Dr. Henry Young performed a medical examination upon the plaintiff's decedent, Joseph J. Lee, for the defendant New York City Fire Department as part of the Fire Department's preemployment screening process. The medical examination included an electrocardiogram. The decedent was found qualified to be a firefighter, and was thereafter inducted into the Fire Department. After a six-week training program, the decedent was assigned to Engine Company 250. On December 4, 1981, the decedent's widow found him lying face up in bed—dead. The postmortem examination determined the cause of death to be marked coronary arteriosclerosis of the right coronary artery and cardiomegaly, i.e., an enlargement of the heart. The decedent was 27 years old at the time.

The plaintiff, the administrator of the decedent's estate, commenced the instant wrongful death action alleging, *inter alia,* medical malpractice as a result of the failure of Dr. Young to diagnose the plaintiff's decedent's heart condition during the preemployment physical examination. The defendants moved for summary judgment, asserting that no physician-patient relationship existed between the plaintiff's decedent and Dr. Young at the time of the examination. Accordingly, they argued, the action could not be sustained. The Supreme Court disagreed and denied the defendants' motion, relying upon this court's prior decision in *Bradley v St. Charles Hosp.* (140 AD2d 403), stating: "The facts of this case are conceptually similar to the facts in *Bradley v. St. Charles Hospital,* — AD 2d —, 528 NYS 2d 106. The defendant's failure to detect the deceased's heart condition was clearly relied upon by both parties as a sign of health and ability to perform as a firefighter."

This appeal brings up for review the Supreme Court's ruling on the issue of the physician-patient relationship.

It is well settled that a physician, by taking charge of a case, represents that he will use reasonable care and his best judgment in exercising his skills, and the law implies that he represents his skills to be such as are ordinarily possessed by physicians in the community *(see, Pike v Honsinger,* 155 NY

201, 209). Generally, recovery for a physician's malpractice is predicated upon the existence of a physician-patient relationship *(see, LoDico v Caputi,* 129 AD2d 361; *Ferguson v Wolkin,* 131 Misc 2d 304; Annotation, *Physician Duties and Liabilities to Person Examined Pursuant to Physician's Contract with Such Person's Prospective or Actual Employer or Insurer,* 10 ALR3d 1071). The physician-patient relationship is a consensual one, and while it may arise out of a contract, the existence of the relationship does not depend upon the existence of any express contract. The relationship is created when the professional services of a physician are rendered to and accepted by another person for the purposes of medical or surgical treatment *(see, United Calendar Mfg. Corp. v Huang,* 94 AD2d 176, 178; 84 NY Jur 2d, Physicians, Surgeons, and Other Healers, § 134, at 93).

The physician-patient relationship does not exist if the physician is retained solely to examine an employee on behalf of an employer *(see, Murphy v Blum,* 160 AD2d 914). An exception applies, however, when the physician affirmatively treats or affirmatively advises the employee as to treatment and the treatment actually causes further injury. Thus, a cause of action for malpractice may result even where the physician-patient relationship rests upon an "implied" contract *(see, Hickey v Travelers Ins. Co.,* 158 AD2d 112).

In the instant case, the plaintiff has failed to demonstrate that the plaintiff's decedent and Dr. Young maintained either an express or implied physician-patient relationship. Therefore, summary judgment should have been granted to the defendants.

In *Murphy v Blum (supra),* this court was presented with a situation similar to the case at bar. There, the plaintiff was employed by the National Basketball Association (hereinafter the NBA) as a professional basketball referee. The plaintiff was required by the league to undergo a yearly physical examination to ensure that he would be able to withstand the rigors of his job during the upcoming season. The plaintiff was examined by an NBA physician, who, after his examination, orally apprised NBA officials that the plaintiff was fit to perform his job despite the fact that the plaintiff's exercise stress test results were "abnormal with respect to ST segment changes". The plaintiff was apprised of the results of the stress test and a copy of the findings was forwarded to the plaintiff's personal physician. Later that season, the plaintiff

suffered a cardiac arrest and could no longer maintain his position as an NBA referee. This court held that the Supreme Court correctly dismissed the plaintiff's complaint for failure to state a cause of action. The court found that since the physician was retained by the NBA solely for the purpose of advising whether the plaintiff would be physically capable of performing his duties as a referee and not for treatment or to advise the plaintiff, no physician-patient relationship existed.

In another very recent case, *Hickey v Travelers Ins. Co. (supra),* this court found that the Supreme Court erred in granting summary judgment to a physician on the plaintiff's malpractice claim. The court was confronted with a plaintiff bringing suit against his employer's insurance carrier and the physician who had examined him. The physician had determined that surgery was not necessary in order to treat the plaintiff's work-related injury. This court held that the plaintiff had successfully demonstrated the existence of a question of fact as to whether an "implied" contract giving rise to a physician-patient relationship existed.

The *Murphy* and *Hickey* cases *(supra)* may be harmonized. Both cases reaffirm the well-established principle that a claim for medical malpractice must be founded upon the existence of a physician-patient relationship. Where, as here, the physician is employed or retained by a third party to conduct an examination for the benefit of the third party, there must be something more than a mere examination in order to find a physician-patient relationship *(compare, LoDico v Caputi,* 129 AD2d 361, *supra, with Twitchell v MacKay,* 78 AD2d 125). There must be some showing that the physician affirmatively treated the patient or affirmatively advised him to be treated. In *Murphy,* the physician did not affirmatively treat or affirmatively advise the plaintiff as to a course of treatment. In *Hickey,* the plaintiff had been examined by the physician on several occasions in 1983, 1984 and 1985, and the physician affirmatively advised him against surgery, advice relied upon by the plaintiff to his detriment.

Applying these principles to the case at bar, it is clear that the plaintiff may not succeed with his claim. The instant case is analogous to the *Murphy* case *(supra).* The record demonstrates that the plaintiff's decedent submitted to a medical examination as part of the eligibility criteria established by the Fire Department. Dr. Young, who examined the plaintiff's decedent, was retained by the Fire Department solely for the purpose of advising it as to whether the plaintiff was physi-

cally fit to become a firefighter. Therefore, the physician-patient relationship did not exist between the plaintiff's decedent and Dr. Young. There is no evidence in the record to indicate that Dr. Young affirmatively treated or otherwise affirmatively gave advice to the plaintiff as to a course of treatment. Thus, a cause of action sounding in medical malpractice may not be maintained against the defendants *(see, Ferguson v Wolkin,* 131 Misc 2d 304, *supra* [wherein the court ruled that the examining physician could not be held liable by employee for his conclusions reached in a report he had prepared solely for the employer]).

Contrary to the plaintiff's contention, the Supreme Court's reliance upon our prior decision in *Bradley v St. Charles Hosp.* (140 AD2d 403, *supra),* was misplaced since that case is clearly distinguishable from the case at bar. Under the particular set of circumstances found in *Bradley,* this court held that dismissal of the action was not warranted on the basis that there was no physician-patient relationship. The record in *Bradley* indicates that the deceased had been an employee of the defendant St. Charles Hospital. The hospital annually evaluated the health of its employees and over the years the plaintiff had been given chest X rays as part of the examination. The chest X rays had apparently been added to the deceased's physical examination after a tine test for tuberculosis had come back positive. After several years, she died of cancer and her estate sued the hospital on its failure to properly interpret the X rays. The failure of the hospital to establish the nonexistence of a physician-patient relationship upon these facts led to this court's affirmance of the denial of the hospital's motion for summary judgment.

The facts in *Bradley (supra)* clearly established that an ongoing relationship existed between the deceased and the hospital and that she could have reasonably relied upon the results of her annual examination. The chest X rays were added to the deceased's annual examination to meet her specific medical situation, i.e., they were included in the annual examination only after the deceased had tested positive on her tuberculin skin test. The deceased had every reason to believe that the hospital was monitoring her condition, and that she could rely upon it for a proper diagnosis of her condition. Thus, the result in *Bradley* is more consistent with that in the *Hickey* case *(supra)* since facts existed to suggest that the hospital had embarked upon an affirmative course of treatment upon which the decedent had relied to her

detriment. Accordingly, as in *Hickey,* there was a question of fact as to whether an "implied" contract existed between the physician and patient.

Unlike the situation in *Bradley* or *Hickey (supra),* the plaintiff's decedent herein had only a single examination, and there are no other factors present to indicate that Dr. Young affirmatively treated or otherwise advised the plaintiff's decedent so as to establish an implied doctor-patient relationship *(see, LoDico v Caputi,* 129 AD2d 361, *supra* [wherein the examination was conducted solely for the purpose of rating the plaintiff's injury for an insurance carrier and the plaintiff could not later sue for the physician's failure to diagnose a latent brain tumor]).

Accordingly, since the record herein fails to demonstrate the existence of an implied or express physician-patient relationship between the plaintiff's decedent and Dr. Young, which is necessary in order for liability to attach, the order of the Supreme Court is reversed, and the defendants' motion for summary judgment dismissing the complaint is granted.

THOMPSON, J. P., and HARWOOD, J., concur with BALLETTA, J.; LAWRENCE, J., concurs in the result only.

Ordered that the order is reversed, on the law, with costs, and the defendants' motion for summary judgment dismissing the complaint is granted.