408 S.E.2d 655

**Joyce A. RAND, Plaintiff
Below, Appellee,**

v.

**Susan W. MILLER, M.D., Defendant
Below, Appellant.**

**No. 19795.**

Supreme Court of Appeals of
West Virginia.

Submitted May 14, 1991.

Decided July 25, 1991.

Rehearing Denied Sept. 5, 1991.

William F. Byrne, Stone, Gallagher & Byrne, Morgantown, and John M. Hedges, Charleston, for appellee.

Herbert G. Underwood and Matthew J. Mullaney, Steptoe & Johnson, Clarksburg, for appellant.

MILLER, Chief Justice.

This is an appeal from a final order of the Circuit Court of Monongalia County dated March 27, 1990, which denied the motion of the defendant below, Susan W. Miller, M.D., to set aside a jury verdict in favor of the plaintiff below, Joyce A. Rand. The issue presented is whether a physician who is hired by an employer to evaluate the medical records of prospective employees is guilty of malpractice when the physician renders an inaccurate medical opinion which prevents an applicant from getting a job. We conclude that in such circumstances the physician cannot be held liable for malpractice, and we reverse the judgment of the circuit court.

In November, 1987, the plaintiff applied for a position with the United States Postal Service at the Morgantown Post Office. As a former employee of the Postal Service, the plaintiff was eligible for reinstatement.[1] After her interview, the plaintiff was told that the job was hers subject to the medical evaluation which was required of all prospective employees. The plaintiff was given a medical examination and assessment form, part of which was completed by her personal physician, Kimberly Stearns, M.D., after a physical examination. Although the form indicated that the plaintiff had suffered a back injury in an automobile accident in 1984, Dr. Stearns found the plaintiff "healthy," with no "restrictions of activity."

The plaintiff returned the completed form to the Post Office, which, in turn, forwarded it to the defendant, a physician with whom the Postal Service had contracted to screen the medical records of prospective employees and evaluate their fitness for duty. On December 4, 1987, after reviewing the medical assessment form, the defendant requested additional information concerning the injuries the plaintiff suffered in the automobile accident. She apparently was provided with records of the plaintiff's hospitalization and a lumbar CT scan.

On December 7, 1987, the defendant dictated a two-sentence report stating that although Dr. Stearns had found no disability resulting from the automobile accident, "after reviewing [the plaintiff's] past medical history, a personality disorder is detected." On or about December 30, 1987, the plaintiff was summoned to the Post Office. At that time, the plaintiff became aware of the contents of the defendant's report and that it had been made part of the plaintiff's employment application and personnel file. By letter dated February 3, 1988, the Postal Service advised the plaintiff that, following review of her personnel file, she was not being hired for the position.

On February 22, 1989, the plaintiff instituted an action against the defendant in the Circuit Court of Monongalia County for defamation and medical malpractice, among other grounds. The circuit court subsequently dismissed as time-barred the defamation claim, and trial commenced on February 7, 1990 on the malpractice claim. By special interrogatory, the jury, on February 12, 1990, rendered a verdict in favor of the plaintiff in the amount of $665,000. The circuit court subsequently denied defense motions for a new trial and for judgment notwithstanding the verdict.

On appeal, the defendant asserts that the trial court erred in allowing the case to go to the jury on the malpractice claim. The defendant contends that there was no doctor-patient relationship between her and the plaintiff which would give rise to a duty of care, the breach of which would justify a medical malpractice action.

■ The essence of a medical malpractice action is a physician-patient relationship. We recognized as much in *Weaver v. Union Carbide Corp.*, 180 W.Va. 556, 378

---

1. The plaintiff was employed by the Postal Service from 1981 through 1986, when she apparently left to pursue business interests in the private sector.

S.E.2d 105 (1989), where we refused to allow the plaintiff to maintain a malpractice action against a marriage counselor with whom the plaintiff's husband had become romantically involved after seeking professional counseling. In Syllabus Point 1, in part, we held that the actions of the marriage counselor could give rise to a malpractice action on the part of the patient:

> "It is generally recognized that sexual intimacy with a patient, induced by a marriage or other counselor, is a form of malpractice permitting recovery of damages for emotional distress and other harm resulting from the malpractice. The basis of the malpractice is the trust relationship that arises from such counseling services which are designed to improve the mental and emotional well being of the patient."

We also recognized, however, that the plaintiff wife did not have a professional relationship with the counselor and held, in Syllabus Point 3, in part: "The lack of any professional relationship between the counselor and the uncounseled spouse forecloses the malpractice claim." *See also Sisson v. Senceca Mental Health/Mental Retardation Council,* 185 W.Va. 33, 404 S.E.2d 425 (1991).

■ Other courts have concluded that where a physician is hired by an employer to conduct a physical examination of an actual or prospective employee, ordinarily there is no professional relationship upon which to base a medical malpractice claim by such employee. The general rule was stated in *Ervin v. American Guardian Life Assurance Co.,* 376 Pa.Super. 132, 136, 545 A.2d 354, 357 (1988), *appeal denied,* 522 Pa. 604, 562 A.2d 826 (1989):

> " '[A] physician who is retained by a third party to conduct an examination of another person and report the results to the third party does not enter into a physician-patient relationship with the examinee and is not liable to the examinee for any losses he suffers as a result of the conclusions the physician reaches or reports.' Proof of Facts: Existence

of Physician and Patient Relationship, 46 P.O.F.2d 373, 384."

In *Keene v. Wiggins,* 69 Cal.App.3d 308, 313, 138 Cal.Rptr. 3, 7 (1977), the court recognized, referring to the Annotation in 10 A.L.R.3d 1071 (1966), that other jurisdictions had "uniformly" held:

> "[W]here no physician-patient relationship exists the doctor's only duty is to conduct the examination in a manner not to cause harm to the person being examined. The physician acts as an agent of the person requesting the examination ... and absent special circumstances, his duty to observe good standards of professional skill in reporting the results of the examination runs only to the person employing him." (Footnote omitted; citation omitted).

*See Ewing v. St. Louis–Clayton Orthopedic Group, Inc.,* 790 F.2d 682 (8th Cir. 1986); *Peace v. Weisman,* 186 Ga.App. 697, 368 S.E.2d 319 (1988); *Thomas v. Kenton,* 425 So.2d 396 (La.App.1982); *Hoover v. Williamson,* 236 Md. 250, 203 A.2d 861 (1964); *Ryans v. Lowell,* 197 N.J.Super. 266, 484 A.2d 1253 (1984); *LoDico v. Caputi,* 129 A.D.2d 361, 517 N.Y.S.2d 640 (1987), *appeal denied,* 71 N.Y.2d 804, 528 N.Y.S.2d 829, 524 N.E.2d 149 (1989); *Johnston v. Sibley,* 558 S.W.2d 135 (Tex.Civ. App.1977); *Lotspeich v. Chance Vought Aircraft,* 369 S.W.2d 705 (Tex.Civ.App. 1963); *Wilcox v. Salt Lake City Corp.,* 26 Utah 2d 78, 484 P.2d 1200 (1971). *See also Tompkins v. Pacific Mut. Life Ins. Co.,* 53 W.Va. 479, 44 S.E. 439 (1903). *See generally* 61 Am.Jur.2d *Physicians, Surgeons, & Other Healers* §§ 297, 298 (1981); Annot., 10 A.L.R.3d 1071.

Where it is alleged that inaccurate information or an erroneous diagnosis contained in the examining physician's report causes the person examined to lose his job or some other valuable economic benefit, the same reasoning applies. In *Felton v. Schaeffer,* 229 Cal.App.3d 229, 279 Cal.Rptr. 713 (1991), the plaintiff was not hired for a job as a school maintenance supervisor because his preemployment physical erroneously showed that he was not taking his prescribed high-blood pressure medication regularly. The plaintiff filed a malpractice

action against both the doctor who conducted the physical examination and the doctor who, without examining the plaintiff, reviewed the medical findings. After reviewing the authorities elsewhere, the court noted "overwhelming agreement" among other jurisdictions "that a physician has no liability to an examinee for negligence or professional malpractice absent a physician/patient relationship, except for injuries incurred during the examination itself." 229 Cal.App.3d at 235, 279 Cal.Rptr. at 716. *Accord Rogers v. Horvath,* 65 Mich.App. 644, 237 N.W.2d 595 (1975).

The appellee points out that there are several cases which reach an opposite conclusion. Both *Olson v. Western Airlines, Inc.,* 143 Cal.App.3d 1, 191 Cal.Rptr. 502 (1983), and *Armstrong v. Morgan,* 545 S.W.2d 45 (Tex.Civ.App.1976), stand for the proposition that even in the absence of a doctor-patient relationship, a doctor may be liable to one he examines on behalf of an employer for providing inaccurate information or an erroneous diagnosis which causes the employee to lose a job or some other economic benefit.[2] In both cases, the physician was found to have a duty to conduct the examination so as not to injure the plaintiff, physically or *otherwise.* In *Armstrong,* liability was premised in great part on the principle, recited in an earlier Texas case, that "'the courts will find a duty where, in general, reasonable men would recognize it and agree that it exists.'" *Childs v. Greenville Hosp. Auth.,* 479 S.W.2d 399, 401 (Tex.Civ.App.1972), *quoting* Prosser, *Law of Torts* § 53 (3d ed. 1964). In *Olson,* the California court relied primarily upon "[t]he fundamental principle ... that all persons are required to use ordinary care to prevent others being injured as a result of their conduct." 191 Cal.Rptr. at 507.

These two cases are not authoritative. *Armstrong* is contradicted by a later Texas intermediate appellate court case, *Johnston v. Sibley, supra,* in which a finding of nonliability is premised on the lack of a doctor-patient relationship. The Texas Supreme Court has apparently not spoken on this issue. In addition, the California Court of Appeals in *Felton v. Schaeffer, supra,* noted that the California Supreme Court had ordered that the opinion in *Olson* not be published. 229 Cal.App.3d at 235 n. 3, 279 Cal.Rptr. at 716 n. 3.

We need not make a definitive statement on the question of whether a physician hired by an employer to examine an employee is totally immune from a malpractice action brought by the employee. In the present case, there was an even more tenuous relationship between the plaintiff and the defendant doctor in that there was no physical examination at all.

Moreover, there was evidence that the adverse report was the result of several heated telephone conversations between the plaintiff and the doctor and her secretary in which the plaintiff complained about the delay in processing her evaluation. The plaintiff's claim that the doctor intentionally and falsely labeled the plaintiff as having a mental condition is in the nature of a defamation.

In this case, it is sufficient to state that a physician who undertakes to evaluate a prospective employee's medical records for the employer lacks a sufficient professional relationship with the employee to support a malpractice action. If the physician reports false information, a defamation action may be brought.

■ In Syllabus Point 1 of *Crump v. Beckley Newspapers, Inc.,* 173 W.Va. 698, 320 S.E.2d 70 (1983), we set out the elements of a defamation action for a private individual as distinguished from a public official or person:

"The essential elements for a successful defamation action by a private individual are (1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the

---

**2.** In *Armstrong,* the plaintiff, who had just been promoted, lost his job when the employer's physician reported that the plaintiff was "in very bad physical condition." In *Olson,* the plaintiff was not hired for a position on a flight crew when the doctor who conducted the preemployment physical concluded that the plaintiff was prediabetic.

part of the publisher; and (6) resulting injury."

*See Bryan v. Massachusetts Mut. Life Ins. Co.,* 178 W.Va. 773, 364 S.E.2d 786 (1987). We went on to say in *Crump:* "A statement may be described as defamatory 'if it tends so to harm the reputation of another as to lower him in the estimation of the community *or to deter third persons from associating or dealing with him.*' Restatement (Second) of Torts § 559 (1977)[.]" 173 W.Va. at 706, 320 S.E.2d at 77.[3] (Emphasis added).

It has been recognized that a defamation action may be maintained against a physician who makes a false report of a prospective employee's health, thereby causing the prospective employer to fire or not to hire the person examined. *See Schaeffer v. Felton, supra; Rogers v. Horvath, supra.* It is also recognized, however, that a physician who is hired by an employer to make such a report may have a qualified privilege with regard to the matters contained therein. *See generally* 50 Am.Jur.2d *Libel & Slander* § 213 (1970); Annot., 73 A.L.R.2d 325 (1960). We explained the meaning of "qualified privilege" and discussed the ways in which it may be overcome in *Crump v. Beckley Newspapers, Inc., supra.*

■ Unfortunately, the plaintiff's defamation claim was not filed in time. In the Syllabus of *Duffy v. Ogden Newspapers, Inc.,* 170 W.Va. 318, 294 S.E.2d 121 (1982), we stated:

"'An action for libel is governed by the one-year limitation period established by *W.Va.Code,* 55–2–12(c).' Syllabus, *Cavendish v. Moffitt,* [163 W.Va. 38], 253 S.E.2d 558 (1979)."[4]

*See Rodgers v. Corporation of Harpers Ferry,* 179 W.Va. 637, 371 S.E.2d 358 (1988). Here, the evidence indicates that the plaintiff was aware in December of 1987 of the contents of the defendant's report, of the fact that it had been placed in the plaintiff's personnel file, and of the fact that it would likely affect her chances at employment. On January 4, 1988, the plaintiff's attorney began requesting the records upon which the defendant based her conclusion. The plaintiff received official notice that she was not being hired for the position at the Morgantown Post Office on February 3, 1988, but did not file a complaint in the matter until February 22, 1989, well over a year later. We must conclude, as the trial court did, that the action is now barred.

For the reasons stated herein, we conclude that the claim of medical malpractice was not available to the plaintiff in the action below. Accordingly, we reverse the judgment of the Circuit Court of Monongalia County and set aside the jury's verdict in the proceedings below.

Reversed.

---

3. It appears that imputations of insanity or a mental disorder are among those statements that are actionable *per se. Bratt v. International Business Machines Corp.,* 392 Mass. 508, 467 N.E.2d 126 (1984). *See generally* 50 Am.Jur.2d *Libel & Slander* §§ 91, 108 (1970); Annot., 23 A.L.R.3d 652 (1969).

4. W.Va.Code, 55–2–12(c) (1959), provides: "Every personal action for which no limitation is otherwise prescribed shall be brought: ... (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative."