**David C. GREENBERG, M.D., Petitioner,**

v.

**Carolyn L. PERKINS, f/k/a Carolyn L. Hudson, Respondent.**

No. 91SC768.

Supreme Court of Colorado, En Banc.

Feb. 1, 1993.

Cooper & Kelley, P.C., Thomas B. Kelley, Mark A. Fogg, John R. Mann, Denver, for petitioner.

Ozer & Mullen, P.C., Anthony L. Sokolow, Christopher C. Felton, Denver, for respondent.

Montgomery Little Young Campbell & McGrew, P.C., Robert R. Montgomery, J. Bayard Young, William H. ReMine, III, Englewood, for amicus curiae Colorado Medical Soc.

McDermott, Hansen & Reilly, William J. Hansen, Denver, for amicus curiae Colorado Trial Lawyers Assn.

Justice LOHR delivered the Opinion of the Court.

We granted certiorari to review the judgment of the Colorado Court of Appeals in *Perkins v. Greenberg,* 829 P.2d 461 (Colo. App.1991), reversing a summary judgment in favor of David C. Greenberg, M.D., in a negligence action brought against him by Carolyn L. Perkins in Denver District Court. Perkins alleged that she suffered injuries to her lower back as a result of testing procedures performed by a third party and requested by Greenberg following his own independent medical examination of Perkins. The district court based summary judgment on the conclusion that in the absence of a physician-patient relationship the doctor owed no duty of care to Perkins to protect her from the asserted injuries. The court of appeals reversed, holding that even though there was no

physician-patient relationship between Greenberg and Perkins, the doctor owed Perkins "a duty to exercise due care, both in examining her personally and in directing that she undergo further testing as a part of defendant's examination regimen." *Id.* at 464. We affirm the judgment of the court of appeals.

## I

This dispute raises the question of whether David C. Greenberg, M.D. (Greenberg), owed Carolyn L. Perkins (Perkins) any duty of care when he conducted an independent medical examination of her pursuant to C.R.C.P. 35(a)[1] and then referred her for an additional evaluation to test whether his initial diagnosis was correct. Because this case comes to us from the court of appeals' reversal of the district court's grant of summary judgment in favor of Greenberg, we first review the principles that govern summary judgment and then set forth the facts that we must consider in determining the propriety of the court of appeals' decision.

Summary judgment is a drastic remedy that is warranted only on a clear showing that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56; *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1339–40 (Colo.1988); *accord Civil Serv. Comm'n v. Pinder*, 812 P.2d 645, 649 (Colo.1991); *Elm Distrib. v. Tri–Centennial Corp.*, 768 P.2d 215, 218 (Colo.1989). The party moving for summary judgment bears the burden of establishing the lack of a triable factual issue, and if there are any doubts as to the existence of such an issue, they must be resolved against that party. *Elm Distrib.*, 768 P.2d at 218; *Churchey*, 759 P.2d at 1340. Although the party opposing summary judgment is entitled to the benefit of all favorable inferences that may be drawn from the facts contained in the record, *Churchey*, 759 P.2d at 1340; *Kaiser Foundation Health Plan v. Sharp*, 741 P.2d 714, 718 (Colo.1987), the movant's request must be granted where the facts are undisputed and the opposing party cannot prevail as a matter of law. *Sharp*, 741 P.2d at 718. Applying these principles, we must determine whether the record in the present case supports the district court's entry of summary judgment in favor of Greenberg. We begin therefore by presenting the facts that formed the basis for that court's decision.

In May of 1985, Perkins was a passenger in a shuttle bus at Stapleton International Airport and sustained injuries to her cervical spine when the bus struck a stop sign, causing her to fall forward and another passenger to fall on top of her. As a result, she brought a personal injury action against both the bus driver and the owner-operator of the bus to recover damages for her injuries. During the pendency of that litigation, the defendants' counsel sought to determine the extent of Perkins' injuries and for that purpose asked her to undergo an independent medical examination. The defendants' counsel retained Greenberg for the limited purpose of conducting this examination; his employment did not include providing Perkins with any medical advice, care, or treatment. Perkins agreed to submit to the examination and, pursuant to defense counsel's referral, reported to Greenberg's office on March 30, 1987.[2]

On that day Greenberg spent approximately ten to fifteen minutes taking Perkins' medical history. During this time, Perkins told him that she had been experi-

---

**1.** *See* n. 2, below.

**2.** Although Greenberg's examination was conducted by agreement rather than by a court order under C.R.C.P. 35(a), both parties characterize it as having been conducted pursuant to that rule. We adopt that same characterization for the purpose of this opinion. In pertinent part, C.R.C.P. 35(a) provides as follows:

When the mental or physical condition ... of a party ... is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician.... The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

encing problems with her neck and right arm since the shuttle bus accident and described for him the medical, chiropractic, and physical therapy treatments that she had received for these injuries. Perkins also informed Greenberg that she had a history of back problems and that she had undergone four previous surgeries in her lower back region. Although Greenberg's actual examination of Perkins was limited to her cervical spine and upper extremities, as these were the areas that she claimed were injured in the shuttle bus collision, he did see the scars from the prior surgeries on her lower back.

Based on his examination, Greenberg was left with the impression that Perkins suffered from symptom magnification syndrome, a condition in which a person either consciously or unconsciously exaggerates symptoms of injury, and therefore referred her for further testing so as to confirm or rule out this diagnosis. Specifically, following his examination Greenberg wrote out a prescription form referring Perkins to the Denver Occupational Conditioning Center, Inc. (DOCC) for a "functional capacity evaluation." This evaluation consisted of a series of physical tests designed to measure Perkins' strength and range of motion. The tests required more than two hours to perform and included various lifting and pushing exercises. Greenberg was familiar with the nature of the tests. Pursuant to the referral, Perkins reported to DOCC on April 17, 1987, two and one-half weeks after Greenberg's preliminary examination, and participated in the evaluation.

Although Perkins was represented by counsel throughout this period and was also under the care of her own treating physicians and chiropractor, there is nothing in the record indicating that she either notified these persons or sought their advice regarding Greenberg's referral for the functional capacity evaluation.[3] However, when she reported to DOCC she informed Jan Hanson, the physical therapist who administered the evaluation, of her previous back surgeries. Upon receiving this information, Hanson became concerned that some of the tests that Greenberg had requested would aggravate Perkins' lower back problems and therefore telephoned Greenberg to ensure that he wanted her to proceed with the functional capacity evaluation. In her deposition testimony, Hanson recalled that upon relating her concern to Greenberg, she was told to "do the best [she] could to assess [Perkins'] functional abilities." Hanson proceeded with the testing accordingly.

After completion of the functional capacity evaluation, Perkins began to experience pain in her lower back and has since had to undergo surgery to alleviate the pain. As a result, she instituted this action in Denver District Court against Greenberg contending that the various lifting and pushing tasks that she performed during the course of the functional capacity evaluation injured her lower back, which had been left in a weakened condition by her four previous surgeries.[4] Perkins based her action against Greenberg on allegations that he was negligent in referring her for the evaluation.[5] Greenberg moved for summary

3. A letter to Perkins' attorneys from her chiropractor suggesting that he would have objected to the performance of the functional capacity evaluation had he known of it beforehand is a strong indication that she participated in the tests without seeking the advice of her health care providers.

4. Perkins also asserted claims for relief against Hanson, contending that Hanson negligently administered the functional capacity evaluation. Based on her further allegation that Hanson acted either within the scope of her employment with DOCC or under DOCC's supervision when she conducted the tests, Perkins asserted that DOCC was vicariously liable for this negligence. Pursuant to a stipulation resulting from a settle-

ment, however, the district court dismissed Perkins' claims against both Hanson and DOCC. Consequently, the only claims before us for review are those against Greenberg, in which Perkins contends that he was negligent in referring her for the functional capacity evaluation.

5. Perkins asserted two claims for relief against Greenberg, both based on allegations of negligence. As originally pleaded, the first appears to have been a malpractice claim predicated upon an alleged physician-patient relationship. This inference is derived from Perkins' second claim for relief, which she added by amendment and prefaced by the statement that the facts "may not establish a physician-patient relationship between [Perkins] and Defendant

judgment, contending that in the absence of a physician-patient relationship, he owed no duty of care to Perkins. The district court agreed and granted summary judgment. On appeal, the court of appeals reversed, holding that the absence of a physician-patient relationship does not preclude the recognition of a duty. *Perkins,* 829 P.2d at 463.

In her brief on certiorari review, Perkins relies on two closely related alternative theories to impose liability on Greenberg. First, she relies on authority that holds that even in the absence of a physician-patient relationship a doctor administering an independent medical examination is liable for injuries resulting from negligence occurring in the course of the examination. She then contends that the functional capacity evaluation was part of the independent medical examination and that injuries occurring during the evaluation and resulting from a negligent referral for the performance of tests should provide a basis for liability. Alternatively, Perkins urges us to recognize that, as an extension of the recognized duty of care applicable during the course of an independent medical examination, a physician who performs an independent medical examination has a duty of care in referring the examinee for the performance of tests.

The nature and extent of any duty owed to an examinee by a physician performing an independent medical examination is a matter of first impression in this state. In order to resolve the issue to the extent necessary to decide this case, we first consider the approaches that other jurisdictions have taken with respect to a physician's duty to an examinee who is examined at the request of a third person, and then employ the analysis that we have developed in our own cases for determining the exis-

tence and scope of duties. We conclude that the rationale of the cases from other jurisdictions as well as the analysis set forth in our own duty cases support a holding that a physician who conducts an independent medical examination owes a duty of care to an examinee not to refer her for testing of a type that foreseeably will result in injury based on information known to the physician.

## II

### A

Cases from other jurisdictions addressing the issues of the existence and extent of any duty of care owed by a physician to an examinee who is not a patient employ a variety of analyses involving combinations of ordinary negligence and medical malpractice theories. A brief review of the elements of these two related bases for liability should prove helpful as a preface to a survey of those cases.

To establish a prima facie case for negligence, a plaintiff must show a legal duty of care on the defendant's part, breach of that duty, injury to the plaintiff, and causation, i.e., that the defendant's breach caused the plaintiff's injury. *Observatory Corp. v. Daly,* 780 P.2d 462, 465 (Colo.1989); *Perreira v. State of Colorado,* 768 P.2d 1198, 1208 (Colo.1989). A negligence action will fail therefore if it is based on circumstances for which the law imposes no duty of care upon the defendant for the plaintiff's benefit. *Perreira,* 768 P.2d at 1208; *University of Denver v. Whitlock,* 744 P.2d 54, 56 (Colo.1987). In the event that a duty of care is found to exist, the standard against which the defendant's conduct will be measured for purposes of determining whether the duty was breached is whether the defendant acted as a reasonable person

David C. Greenberg, M.D." She now concedes that no physician-patient relationship existed between her and Greenberg. Perkins' second claim for relief was an ordinary negligence claim in which she contended that Greenberg owed to her a duty of ordinary care not to injure her either in the course of his examination or by any tests or evaluations ordered in connection with the examination.

A review of Perkins' complaint shows that her claims against Greenberg are based solely on his conduct in referring her for the functional capacity evaluation and that she is not seeking recovery from him based on a theory of vicarious liability arising out of any negligence by either Hanson or DOCC in performing that evaluation. Furthermore, Perkins asserts no claim that Greenberg was negligent in selecting DOCC to conduct the evaluation.

of ordinary prudence would under the same or similar circumstances. *United Blood Servs. v. Quintana*, 827 P.2d 509, 519 (Colo.1992); *Metropolitan Gas Repair Serv., Inc. v. Kulik*, 621 P.2d 313, 318 (Colo.1980) ("In negligence cases the duty is to use reasonable care in light of the apparent risk.").

■ Medical malpractice is a particular type of negligence action. *See Melville v. Southward*, 791 P.2d 383, 387 (Colo.1990). The duty of care on which a medical malpractice action is predicated arises out of the professional relationship between physician and patient. As we have long recognized,

> [i]n the absence of a special contract, the law implies that a [physician][6] employed to treat an injury contracts with his patient, first, that he possesses that reasonable degree of learning and skill which is ordinarily possessed by others of the profession; second, that he will use reasonable and ordinary care and diligence in the exercise of his skill and the application of his knowledge to accomplish the purpose for which he is employed; and third, that he will use his best judgment in the application of his skill in deciding upon the nature of the injury and the best mode of treatment.

*Klimkiewicz v. Karnick*, 150 Colo. 267, 274, 372 P.2d 736, 739 (1962) (quoting *Bonnet v. Foote*, 47 Colo. 282, 285–86, 107 P. 252, 254 (1910)); *see also Rand v. Miller*, 185 W.Va. 705, 408 S.E.2d 655, 656 (W.Va. 1991) ("The essence of a medical malpractice action is a physician-patient relationship."); *accord Lee v. City of New York*, 162 A.D.2d 34, 560 N.Y.S.2d 700, 701 (1990); *Johnston v. Sibley*, 558 S.W.2d 135, 137 (Tex.Civ.App.1977). Therefore, although medical malpractice claims are governed by tort principles, the relationship that generally underlies the recognition of a duty of care and that consequently gives rise to a physician's liability is contractual in nature.

■ If a physician undertakes to treat or otherwise provide medical care to another, he thereby either expressly or impliedly contracts to exercise reasonable and ordinary care and diligence to fulfill that purpose. In such a circumstance, a physician-patient relationship exists, and the physician's contractual obligations create the matrix from which an independent tort obligation arises. *See Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041, 1043 (Colo. 1983) (the contractual obligations that a homebuilder owes to a purchaser may give rise to a common law duty to perform work with reasonable care and skill); *Kulik*, 621 P.2d at 317–18 (stating the same with respect to a contractual relationship between a heating contractor and its customer). The standard of care against which the physician's conduct will be measured is "whether a reasonably careful physician of the same school of medicine as the [physician] would have acted in the same manner as did the [physician] in treating and caring for the [patient]." *Melville*, 791 P.2d at 387; *Klimkiewicz*, 150 Colo. at 274–75, 372 P.2d at 740; *cf. Bloskas v. Murray*, 646 P.2d 907, 914 (Colo.1982) (suggesting this to be the standard). This same standard, however, will not necessarily extend to a physician who undertakes a professional responsibility not involving medical care and treatment incident to a physician-patient relationship. *See, e.g., Keene v. Wiggins*, 69 Cal.App.3d 308, 138 Cal.Rptr. 3, 6 (1977) (a doctor is not necessarily required to exercise the same degree of skill toward every person he sees; the duty owed varies with the relationship between the parties); *Beadling v. Sirotta*, 41 N.J. 555, 197 A.2d 857, 860–61 (1964) (scope of duty owed by a physician examining a person at the request of an employer is not coextensive with the duty that a physician owes to a private patient); *accord Rogers v. Horvath*, 65 Mich.App. 644, 237 N.W.2d 595, 597 (1975); *Ferguson v. Wolkin*, 131 Misc.2d 304, 499 N.Y.S.2d 356, 357 (N.Y.Sup.Ct., 1986). In the absence of such a relationship, any duty to be recognized in connection with the performance of professional services must be determined in each instance by taking into account the nature of the services to be per-

---

**6.** "Surgeon" in original text.

formed, the circumstances surrounding the request for service, and any information gleaned by the physician during performance of the services that would suggest a need to proceed with care in order to avoid injury to the person being examined.

■ The cases that consider the duty of care issue in circumstances where a physician conducts a medical examination of a person at the request of an employer, insurer, or other third person are remarkable for the diversity of their analyses. *See, e.g., Keene,* 69 Cal.App.3d 308, 138 Cal. Rptr. 3; *Hoover v. Williamson,* 236 Md. 250, 203 A.2d 861 (Md.App.1964); *Henkemeyer v. Boxall,* 465 N.W.2d 437 (Minn.App. 1991); *Beadling,* 41 N.J. 555, 197 A.2d 857; *Ferguson,* 131 Misc.2d 304, 499 N.Y.S.2d 356; *Twitchell v. MacKay,* 78 A.D.2d 125, 434 N.Y.S.2d 516 (N.Y.App.Div.1980); *Ervin v. American Guardian Life Assurance Co.,* 376 Pa.Super. 132, 545 A.2d 354 (1988); *Rand,* 185 W.Va. 705, 408 S.E.2d 655. Many courts set forth a "general rule" that in the absence of a physician-patient relationship a physician owes no duty to an examinee. *Anderson v. Glismann,* 577 F.Supp. 1506, 1513 (D.Colo. 1984); *Keene,* 138 Cal.Rptr. at 6–7; *Hoover,* 203 A.2d at 863; *Rogers,* 237 N.W.2d at 597; *Henkemeyer,* 465 N.W.2d at 439; *Chiasera v. Employers Mut. Liab. Ins. Co. of Wis.,* 101 Misc.2d 877, 422 N.Y.S.2d 341, 342 (N.Y.Sup.Ct.1979); *Lotspeich v. Chance Vought Aircraft,* 369 S.W.2d 705, 710 (Tex.Civ.App.1963). Many of these same courts, however, recognize a duty of care if the examining physician undertakes in some way to act on behalf of the examinee, *Keene,* 138 Cal.Rptr. at 7; *Lee,* 560 N.Y.S.2d at 701, or induces reasonable reliance by the person examined, *Keene,* 138 Cal.Rptr. at 7–8; *Lee,* 560 N.Y.S.2d at 702–03. Some courts conclude that medical malpractice standards govern, and recognize a duty of care simply on the basis of the relationship created by the referral and examination. *See Green v. Walker,* 910 F.2d 291, 296 (5th Cir.1990); *Twitchell,* 434 N.Y.S.2d at 519. Others agree but temper this conclusion by expressly limiting the scope of the duty to the functions the physician agrees to undertake. *See Beadling,*

197 A.2d at 861; *Ferguson,* 499 N.Y.S.2d at 357. Still others hold that the absence of a physician-patient relationship precludes a malpractice action, with the concomitant broad duty of care, but that an ordinary negligence action can be maintained in appropriate circumstances. *See Hoover,* 203 A.2d at 863; *Chiasera,* 422 N.Y.S.2d at 342; *Meinze v. Holmes,* 40 Ohio App.3d 143, 532 N.E.2d 170, 173 (1987); *see also Rogers,* 237 N.W.2d at 597. Some of these latter cases are based on the well recognized principle that a person who assumes to act must act with care. *Hoover,* 203 A.2d at 863; *Meinze,* 532 N.E.2d at 173; *see Restatement (Second) of Torts* § 324A (1965).

We have no need to assess the relative merits of the various analytical models for our present purposes. This is because all courts that have considered the issue agree, under one form of analysis or another, that a physician owes a duty of care to a nonpatient examinee to "conduct the examination in a manner not to cause harm to the person being examined." *Rand,* 408 S.E.2d at 657 (quoting *Keene,* 138 Cal.Rptr. at 7); *Felton v. Schaeffer,* 229 Cal.App.3d 229, 279 Cal.Rptr. 713, 716 (1991); *Hoover,* 203 A.2d at 863; *Rogers,* 237 N.W.2d at 597; *Beadling,* 197 A.2d at 860; *Ferguson,* 499 N.Y.S.2d at 358; *Chiasera,* 422 N.Y.S.2d at 342; *Meinze,* 532 N.E.2d at 173; *Johnston,* 558 S.W.2d at 137.

Perkins contends that the functional capacity evaluation was part of Greenberg's independent medical examination and that, under the foregoing authorities, Greenberg owed to her a duty of care in prescribing the evaluation not to request the performance of physical activities that foreseeably would cause her harm. Alternatively, she contends that even if the evaluation is not considered part of the examination, a logical extension of the principle that a physician owes a nonpatient examinee a duty not to harm her in the conduct of the examination would result in the recognition of a duty of care in this case. We agree with Perkins' first argument that the foregoing authorities support the recognition of a duty. Greenberg requested the function-

al capacity evaluation to confirm or refute his preliminary diagnosis of symptom magnification syndrome. Inferentially then, his own examination and diagnosis would not have been complete until he obtained and evaluated this additional data. Even though Greenberg did not administer the functional capacity evaluation himself, he requested it knowing the particular physical maneuvers required by the evaluation regimen. We therefore find Perkins' contention that a duty existed supported by the authorities recognizing that a physician owes a duty to a nonpatient examinee to conduct the examination in such a manner as not to cause harm to that person.

This conclusion is in accord with the principle that a physician's duty is commensurate with the type and degree of responsibility that he assumes. Thus, if a physician undertakes to diagnose, treat, or otherwise care for a person, an action will lie if he performs these functions negligently. So too, if the physician undertakes to examine a person, even if he does so for the sole benefit of a third party, he will owe a duty to the examinee to exercise professional skill in conducting the examination and will be liable for injuries that result from negligent performance of this function. Thus, at least to the extent of the responsibility undertaken, the examination itself may be said to create a relationship between the parties and impose upon the physician a duty to exercise a level of care that is consistent with his professional training and expertise. *See Green,* 910 F.2d at 296.

In summary, cases from other jurisdictions uniformly recognize that even in the absence of a physician-patient relationship, a physician owes a duty to the person being examined to exercise professional skill so as not to cause harm to that person by negligently performing the examination. Although these authorities support Perkins' contention that Greenberg owed to her a duty of care, we must test further the appropriateness of recognizing such a duty in Colorado by looking to our well-developed case law, which provides an analytical method for determining the existence and scope of duties, and by employing that form of analysis.

### B

We have held repeatedly that whether a legal duty is owed by a particular defendant to a particular plaintiff as well as the scope of any such duty are questions of law which a court must determine. *Perreira,* 768 P.2d at 1208; *Whitlock,* 744 P.2d at 57; *Smith v. City and County of Denver,* 726 P.2d 1125, 1127 (Colo.1986).

A court's conclusion as to the existence of a duty is "an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is [or is not] entitled to protection." *Whitlock,* 744 P.2d at 57 (quoting W. Page Keeton, et al. *Prosser and Keeton on the Law of Torts* § 53, at 358 (5th ed. 1984)). Several factors, including the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the defendant's conduct, the magnitude of the burden of guarding against the harm, and the consequences of placing this burden on the defendant are all relevant to a court's consideration of whether to recognize a duty in a particular case. *Daly,* 780 P.2d at 466; *Perreira,* 768 P.2d at 1209; *Whitlock,* 744 P.2d at 57; *Smith,* 726 P.2d at 1127. These factors, however, are not exclusive; a court may consider "any other relevant factors based on the competing individual and social interests implicated by the facts of the case." *Perreira,* 768 P.2d at 1209; *accord Whitlock,* 744 P.2d at 57. Because no one factor is controlling in itself, the question is essentially one of fairness under contemporary standards—that is, would reasonable persons recognize and agree that a duty of care exists. *Whitlock,* 744 P.2d at 57; *Taco Bell, Inc. v. Lannon,* 744 P.2d 43, 46 (Colo.1987). Upon finding the existence of a duty, a court must then consider the scope of that duty and define the applicable standard of care against which the defendant's conduct is to be measured. It is then for the finder of fact to determine whether the defendant breached that duty. *Taco Bell,* 744 P.2d at 50.

In the absence of special circumstances, the law does not generally impose upon a

person a duty to take action for the benefit of another, even if it is reasonably apparent that such action is necessary to protect the other person from injury. *Perreira*, 768 P.2d at 1208; *Whitlock*, 744 P.2d at 57–58. However, we have recognized that people owe a duty to use reasonable care with regard to their affirmative conduct and that such a duty extends to all who may foreseeably be injured if that conduct is negligently carried out. For example, in *Whitlock* we stated that

> [i]n determining whether a defendant owes a duty to a particular plaintiff, the law has long recognized a distinction between action and a failure to act "that is to say, between active misconduct working positive injury to others [misfeasance] and passive inaction or a failure to take steps to protect them from harm [nonfeasance]." . . . "The reason for the distinction may be said to lie in the fact that by 'misfeasance' the defendant has created a new risk of harm to the plaintiff, while by 'nonfeasance' he has at least made his situation no worse, and has merely failed to benefit him by interfering in his affairs."

*Whitlock*, 744 P.2d at 57 (quoting W. Page Keeton, et al. *Prosser and Keeton on the Law of Torts* § 56, at 373 (5th ed. 1984)).

Furthermore, we have determined that this duty may arise independent of a contractual relationship even though such relationships often provide the basis for tort actions. For instance, in *Cosmopolitan Homes*, 663 P.2d 1041, we determined that a subsequent purchaser could maintain a negligence claim against a homebuilder based on the builder's common law duty to act with reasonable care in constructing a home and that this duty existed even though there was no privity of contract between the parties. *Id.* at 1042–44. Therefore, in the present case we conclude that the absence of a physician-patient relationship between the parties does not preclude recognition that Greenberg was subject to a duty to act carefully in referring Perkins for the functional capacity evaluation by virtue of his affirmative conduct that had the potential to create a risk of harm to Perkins.

As we stated above, whether a duty exists in a particular case is a question of law which a court must determine after considering several factors including the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the defendant's conduct, the magnitude of the burden created by imposing such a duty, and the consequences of placing the burden upon the defendant. *Whitlock*, 744 P.2d at 57. We are satisfied that an application of these factors to the present case warrants the imposition of a duty on the part of Greenberg to act with reasonable care in referring Perkins for the functional capacity evaluation.

Turning first to the risk involved in referring a person for a functional capacity evaluation, the record reflects a sufficient potential for physical injury resulting from tests that are negligently selected to require a physician to act with reasonable care in considering whether certain tests are appropriate in a particular case. Although the degree of risk that a referring physician incurs will vary depending on the type of tests requested, we believe that the fact that the procedures that Greenberg selected for Perkins created a particularly great risk of injury because of the significant degree of physical activity involved and because of her history of back surgeries provides a compelling reason to recognize a duty of care in this case.

Additionally, the fact that the risk of Perkins being injured by participating in the functional capacity evaluation was reasonably foreseeable to Greenberg weighs heavily in favor of finding that he was subject to a duty of care. Greenberg contends that a physician conducting an examination pursuant to C.R.C.P. 35(a) has little reason to foresee that the nonpatient examinee will be injured in the course of testing procedures. We agree that ordinarily such a physician may not have the same reason or opportunity to obtain information about an examinee's medical history as he would about a person for whom he was providing care in the course of a physician-patient relationship. Looking to the present case, however, it is clear that Greenberg was

well apprised of Perkins' history of lower back problems. Not only did Perkins inform him of that history at the beginning of his examination on March 30, 1987, but he admittedly saw the scars caused by her prior surgeries when he conducted the examination. Additionally, the physical therapist at DOCC contacted Greenberg before the functional capacity evaluation was administered and questioned him as to whether the tests that he requested were appropriate in light of Perkins' previous surgeries. Thus, we believe that the risk that Perkins would be injured as a result of the tests was reasonably foreseeable to Greenberg. Furthermore, although we fully recognize the important discovery purpose that independent medical examinations serve in our adversary system of justice, see Timpte v. District Court, 161 Colo. 309, 311, 421 P.2d 728, 729 (1966) (recognizing the purpose that our rules of civil procedure serve in the truth-ascertaining process that underlies our judicial system), we are satisfied that the extent of foreseeability in this case based on Greenberg's actual knowledge of Perkins' history outweighs the social utility factor in our analysis and warrants a conclusion that he owed to her a legal duty of care.

We are also satisfied that neither the magnitude of the burden of guarding against this injury nor the consequences of placing this burden on Greenberg are so great that it would be improper to find that a duty existed in this case. Greenberg first suggests that recognizing that independent medical examiners have a duty of care to make appropriate referrals essentially imposes upon them a duty to diagnose whether their examinees have conditions that could potentially be affected by such referrals and that this would subject the examiners to the same duty that treating physicians owe to their patients. He also asserts that there will be serious adverse consequences if a duty of care is extended to examining physicians in that the imposition of a duty will have a chilling effect on their willingness to perform inde-

pendent medical examinations. We are not persuaded by these arguments.

A physician need exercise only reasonable care in referring an examinee for additional tests based on the information obtained in the course of an examination. Thus, he will not be liable for a failure to detect conditions that he has no reason either to know of or to inquire about. As in the present case, however, where a physician is warned that an examinee has conditions that may be exacerbated during the course of further testing, the burden of either conducting further inquiry or of at least informing the examinee of the potential for injury is minimal when compared to the risk involved in the absence of such a protection. Furthermore, although a potential for liability may increase a physician's reluctance to conduct examinations and to refer examinees for additional testing, this is not a reason to absolve a physician of liability if he engages in such conduct negligently.

Greenberg also asserts that any reliance by Perkins on the safety of the functional capacity evaluation was not reasonable because Perkins should have recognized that Greenberg was acting for the defendants in an adversary setting and that he had assumed no responsibility to her. This, he asserts, is especially true because there was ample time between his own examination and the scheduled tests to permit Perkins to consult her own attorneys and medical advisors as to the appropriateness of those tests. We are not persuaded that it is unreasonable for an examinee in such circumstances to expect that a physician, regardless of his allegiance in a litigation setting, would not request procedures of a type that foreseeably would cause injury based on facts known to him.

We are satisfied that the sum total of the above considerations supports our conclusion that Greenberg owed to Perkins a duty to act with reasonable care so as not to cause her injury by referring her for testing of a type that foreseeably would result in injury based on information known to him.[7] We conclude therefore

7. We describe the duty no more broadly than

necessary to resolve the case before us, recog-

that the district court erred in holding that Greenberg owed no duty of care to Perkins. Because the summary judgment was predicated on that holding, the court of appeals properly reversed the district court's grant of summary judgment.

ROVIRA, C.J., does not participate.

---

nizing as we do that the scope of a physician's duty of care to a nonpatient examinee raises difficult issues that should be resolved in the context of each individual case presenting such issues. Furthermore, even though we necessarily have considered foreseeability in determining the existence and scope of duty, the issue of whether Greenberg violated his duty remains to be determined by the trier of fact. *Taco Bell,* 744 P.2d at 50.