F I L E D
United States Court of
Appeals
Tenth Circuit

FEB 13 1997

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

_____

AMANDA DODD–ANDERSON, a minor       )
by and through KRYSTAL L.           )
DODD–ANDERSON, her mother,          )        No. 95-3395
natural guardian and next           )
friend, and KRYSTAL L. DODD–        )        (District of Kansas)
ANDERSON, Individually, BANK        )
ONE, ARIZONA, as trustee for        )
Amanda Dodd–Anderson,               )
                                    )
        Plaintiffs/Appellants,      )        D.C. Nos. 92-1015-MLB
                                    )        and 91-1016-MLB
v.                                  )
                                    )
DAVID V. HENDERSON, M.D.,           )
                                    )
        Defendant/Appellee.         )

_____

ORDER AND JUDGMENT*
_____

Before **HENRY, MURPHY**, and **RONEY\*\***, Circuit Judges.
_____

This is a diversity jurisdiction medical malpractice action

brought by Krystal Dodd–Anderson individually and on behalf of her

newborn child, Amanda Dodd-Anderson, alleging two theories of

_____

*This order and judgment is not binding precedent, except
under the doctrines of law of the case, res judicata and collateral
estoppel. The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.


**The Honorable Paul H. Roney, Senior Circuit Judge for the
Eleventh Circuit, sitting by designation.

liability against the defendant Dr. David V. Henderson. *First*, Dr. Henderson acted negligently when he came to the delivery room within a few minutes after the birth and, although the child was seriously distressed and depressed, he failed to take action to have her transferred to another hospital that was licensed to care for distressed newborns. *Second,* Dr. Henderson was negligent because as chief of staff of the hospital he did not take action to have the attending doctor's privileges revoked or suspended. The district court held that no duty arose under either a physician-patient relationship or in connection with defendant's role as the hospital's chief-of-staff. *Dodd-Anderson v. Stevens,* 905 F. Supp. 937 (D. Kan. 1995). We affirm.

To establish a claim for medical malpractice, plaintiffs must show that defendant owed them a duty, that he breached his duty, and that there is a causal connection between the breached duty and the injuries sustained. *Mellies v. National Heritage, Inc.,* 636 P.2d 215 (Kan. App. 1981).

The patient in this case, Amanda Dodd-Anderson, was a newborn suffering from respiratory problems when she was delivered by obstetrician Dr. Mildred Stevens at Anderson County Hospital in January 1995. After the birth, a respiratory therapist in attendance was apparently concerned about the newborn's respiratory difficulties and asked defendant Dr. David Henderson, medical director of respiratory therapy and chief-of-staff, to come to the hospital. Dr. Henderson observed the baby from a few feet away, and discussed with Dr. Stevens whether she intended to have the

2

baby transferred to another hospital. Dr. Stevens said she did not think a transfer was necessary, but that she would if the baby's condition changed. The day after the delivery, Dr. Stevens and Dr. Henderson again discussed the baby's condition and Dr. Stevens decided to transfer the baby to Kansas University Medical Center, where the newborn could receive tertiary care. She was later diagnosed with cerebral palsy.

Amanda Dodd-Anderson, by and through her mother Krystal Dodd-Anderson, and Krystal Dodd-Anderson, individually, sued Anderson County Hospital, Dr. Stevens, and Dr. Henderson, alleging all defendants negligently caused Amanda injury during her delivery. Plaintiffs settled all claims against the hospital and Dr. Stevens, leaving only the claims against Dr. Henderson.

## I.

The first theory behind plaintiffs' claim is that the baby was injured because she was not transferred to a tertiary care facility soon enough and that the delay caused injury.

Dr. Henderson did not enter into a physician-patient relationship with plaintiffs simply by coming to the hospital at the respiratory therapist's request, observing the newborn and suggesting the newborn be transferred to another hospital.

No cases from Kansas or any other jurisdiction have been found that hold that a physician who merely offers medical advice to an attending physician stands in a physician-patient relationship with that physician's patient such that the advising doctor has a duty

3

to force the attending physician to follow that advice. The cases cited by the plaintiffs are inapplicable.

In *State v. Pitchford*, 697 P.2d 896 (Kan. App. 1985), a physician had drawn blood from a criminal defendant against his will. There was no issue as to whether the physician had treated the defendant, but whether *nonconsensual* treatment created a physician-patient relationship.

In both cases cited from other jurisdictions, *Greenberg v. Perkins*, 845 P.2d 530 (Colo. 1993), and *Walters v. Rinkers*, 520 N.E.2d 468 (Ind. Ct. App. 1988), the defendant physician had direct contact with the plaintiff patient sufficient to raise a question as to duty. The patient in *Greenberg* suffered injuries from testing procedures conducted by a third-party. The patient brought a negligence action against the physician who had ordered the testing after conducting his own independent medical examination of the patient. He "spent approximately ten to fifteen minutes taking [the patient's] medical history . . . and physically examining her cervical spine and upper extremities." *Greenberg*, 845 P.2d at 531-32. In *Walters v. Rinkers*, the patient brought a medical malpractice action against a pathologist for misdiagnosis of a tumor removed from the patient's body. There is no dispute but that the pathologist examined the tumor, consulted with other pathologists, and made findings in a report that was relied upon by patient's family physician. *Walters*, 520 N.E.2d at 470.

The contact defendant had with plaintiff is insufficient even to create a jury question as to whether a doctor-patient

4

relationship existed as in *Rule v. Cheeseman*, 317 P.2d 472 (Kan. 1957), relied upon by the plaintiffs.  In *Cheeseman*, the injured plaintiff sued not only the resident who performed the surgery, but also Dr. Cheeseman as the supervising physician.  In that case, Dr. Cheeseman had discussed the surgery with the patient a few days before, had examined the patient, and had assisted in the operation.  From the initial visits through surgery and follow up visits, "there was not the slightest break in the relationship of patient and surgeon between plaintiff and Doctor Cheeseman. . . ." *Cheeseman*, 317 P.2d at 478.

Unlike the cases cited by plaintiffs, Dr. Henderson had no contact with plaintiffs prior to the delivery, conducted no independent physical examinations, nor did he have any follow up contact with plaintiffs.  Dr. Henderson was present only by virtue of a phone conversation with an attending therapist, not upon request of the physician in charge.  The district court questioned whether even under the facts of *Cheeseman*, a present day court would find a jury question.  Whether or not *Cheeseman* would be good law today, the minimal involvement Dr. Henderson had with this patient did not raise a genuine issue as to whether Dr. Henderson's acts established a traditional doctor-patient relationship.

## II.

Plaintiffs alternatively argue that defendant's status as chief of the medical staff gave rise to a duty to intervene in the baby's treatment and to strip Dr. Stevens of staff privileges at the hospital.  They assert that the applicable law is set out in

5

the Restatement (Second) of Torts section 324A (1965), adopted by Kansas in *Schmeck v. City of Shawnee,* 651 P.2d 585 (Kan. 1982), which states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> > (a)  his failure to exercise reasonable care increased the risk of such harm, or
> >
> > (b)  he has undertaken to perform a duty owed by the other to the third person, or
> >
> > (c)  the harm is suffered because of reliance of the other or the third person upon the undertaking.

Plaintiffs argue that Dr. Henderson undertook the hospital's duty to oversee the medical staff of the county hospital and the hospital's governing body relied upon defendant to report to them regarding medical staff, so that he is liable for his neglect in failing to supervise Dr. Stevens and in failing to revoke her privileges.

Kansas courts have not considered section 324A in the context of medical malpractice actions. We find it inapplicable here where Dr. Henderson's obligations as chief-of-staff are defined by the hospital's bylaws. There is no evidence in the record to support plaintiffs' assertions that under the bylaws, Dr. Henderson was obligated to "supervise" other physicians, nor is there any record evidence that Dr. Henderson had or should have had any information that would support a conclusion that Dr. Stevens was incompetent. In their brief and at oral argument, plaintiffs made repeated

6

references to Dr. Henderson's failure to have the patient transferred immediately "when he knew Amanda was being kept in a hospital that did not have the staff or the facilities to treat her . . . ," and that "Anderson County Hospital was a Level I hospital and had no license or permit to care for severely depressed newborns such as Amanda Dodd-Anderson." Plaintiffs asserted that as a matter of law, Amanda had no business being a patient at the hospital. The only record cite for these statements in plaintiffs' brief is the deposition of Danielle Hansel, management consultant to the hospital, in which she merely acknowledges she was aware of the facts surrounding the baby's care from either conversations with the nurses and doctors or from her independent review of the record. Despite plaintiffs' assurance to the Court at oral argument that the record supported such allegations, our search of the record revealed no evidence pertaining to this argument.

Neither a traditional doctor-patient relationship nor any relationship arising out of Dr. Henderson's administrative roles exists under these facts. Even if Dr. Henderson incurred some duty when he responded to the call of the respiratory therapist, it was only a duty to inform Dr. Stevens of his impressions based on his limited knowledge of the patient. This he did. There is no evidence that he was wrong in this regard.

We hold that no doctor-patient relationship existed between the parties, whatever duties Dr. Henderson owed the parties were fulfilled, and that Dr. Henderson had no duty arising out of his administrative position to suspend Dr. Stevens.

7

In light of our opinion regarding the question of duty, we need not address plaintiffs' challenge to the applicability and the constitutionality of Kansas Statutes Annotation section 65-442(a).

AFFIRMED.

Entered for the Court
Paul H. Roney
Circuit Judge